[L. A. No. 15660. In Bank.—June 25, 1936.]

MITSUO UMEMOTO, Respondent, v. ARCHIE BURNS McDONALD, Appellant.

Lasher B. Gallagher for Appellant.

J. Marion Wright for Respondent.

THE COURT.—This action was brought by plaintiff to recover damages for the wrongful death of his minor daughter, resulting from personal injuries caused by a truck and trailer driven by defendant McDonald. The scene of the occurrence was a street intersection in El Monte, California, to wit: the point where Valley Boulevard, an east-west boulevard, is intersected on the south by Lexington Avenue, which avenue, however, is not cut through to the north. The minor, a sixteen year old girl, started from the southeast corner of Lexington Avenue and Valley Boulevard, to cross Valley Boulevard from south to north in a designated twelve-foot pedestrian crosswalk or zone. Defendant McDonald was driving a ten-ton truck and trailer westerly along Valley Boulevard at a speed of ten or twelve miles an hour. The day was clear and the driver's view, on approaching the crosswalk, was unobstructed. He testified that when he first saw the girl, she was running and was about one-third of the distance across the boulevard, in the crosswalk. The girl was struck by the left front of the truck either about as she reached the north half of the crosswalk or after she had run some five to ten feet northwesterly out of the crosswalk.

The jury, upon trial of the cause, returned a $3,500 verdict for plaintiff, from which defendant McDonald appealed on two grounds: (1) That the deceased was guilty of contributory negligence as a matter of law, and (2) that the trial court committed prejudicial error in sustaining an objection to an impeaching question asked a witness, Taduko Midukami.

██ In support of the first contention appellant cites a local ordinance, which was duly introduced in evidence, and among other things provides that "When within any business district, no pedestrian shall cross a roadway other than by a crosswalk" and "It shall be unlawful for any person to be in any roadway other than in a safety zone or crosswalk, provided that this provision shall not be construed to

prevent the necessary use of a roadway by a pedestrian.'' Appellant also calls attention to section 131½, subdivision (c) of the California Vehicle Act (Deering's Gen. Laws, 1931, Act 5128, vol. II, p. 2515), which provides: ''Every pedestrian crossing a roadway, at any point other than within a marked or unmarked crosswalk shall yield the right of way to vehicles upon the roadway, provided that this provision shall not relieve the driver of a vehicle or the pedestrian from the duty to exercise due care.'' From this premise appellant argues that as every witness in the case, save Taduko Midukami whose testimony will be hereinafter discussed, agreed that at the time of impact the deceased was running and was outside of the confines of the crosswalk, she was guilty of contributory negligence as a matter of law. Appellant, in this connection, cites *Hopkins* v. *Galland etc. Co.*, 218 Cal. 130 [21 Pac. (2d) 553], a case wherein a pedestrian, in violation of a local ordinance, attempted to cross a roadway of a central traffic district other than in a crosswalk, and this court, affirming a directed verdict for defendants, said: ''If ordinance No. 7691 is a valid enactment it follows that at the place where he was injured the plaintiff was there in violation of the terms of the ordinance and that he was guilty of contributory negligence as a matter of law.''

There is, on the facts, a vast difference between the case just cited and the instant case, which brings into operation an exception to the general rule referred to in the above quotation. This exception is recognized in *Morris* v. *Purity Sausage Co.*, 2 Cal. (2d) 536 [38 Pac. (2d) 193] (also relied upon by appellant), which decision states that while the violation of a statute or ordinance as a general rule constitutes negligence, which will bar a recovery if such violation proximately contributes to the injury (19 Cal. Jur., pp. 632, 636), it may happen that prudence and safety of life or limb require the doing of an act which would otherwise be a violation of law, and liability therefor may be avoided by showing that under the circumstances of the particular case the violation was justifiable or excusable.

In the instant case the deceased undertook to cross the boulevard in a designated crosswalk and there was no showing that she left this zone other than because of a sense of imminent danger, or that her divergence was the proxi-

mate cause of or contributed in any way to her injury. A pedestrian is not required to abandon all efforts to flee from danger and to remain in a safety zone until hit by a vehicle in order to be absolved from the charge of contributory negligence as a matter of law. If in the instant case the deceased had remained in the zone, the accident probably would have occurred a few seconds sooner than it did; her departure *westerly* from the zone neither caused nor contributed in any manner to the injury for it increased rather than diminished the opportunity of both parties to avoid the collision. Under the evidence in the record before us and such inferences as may reasonably have been drawn therefrom, the jury was amply justified in returning a verdict for the plaintiff.

██ Appellant's second contention is that the trial court committed prejudicial error in sustaining an objection to an impeaching question asked a witness, Taduko Midukami. This witness, a fifteen year old girl, was the only witness to testify that decedent was in the zone when struck, and her statements were somewhat contradictory. On direct examination she indicated, by marks on a chart, that the accident occurred just on the west edge of the zone; on cross-examination she asserted that decedent was not out of the zone. At the coroner's inquest she had stated as follows: "Q. How far out in the street was she (decedent) when you first saw her? A. Almost across. Q. Was she out of the pedestrian zone at the time? A. I don't know; I couldn't see, but I think she was; *maybe she was trying to get away.*" Cross-examining Taduko on trial of this case, appellant's counsel asked her as an impeaching question if she gave testimony at the coroner's inquest as above quoted, except that he omitted to read to her the underlined portion of her reply to the last question. Plaintiff's counsel objected that the entire reply had not been read to the witness and the court suggested this be done. Appellant's counsel refused to include the underlined words, claiming that they were a mere conclusion, whereupon the trial court sustained plaintiff's objection and the witness was not allowed to answer. This, appellant contends, was reversible error, in that the impeaching question, as asked, included all of the alleged contradictory statements of the witness, the portion omitted being

a pure conclusion not necessary to include, and this evidence was directed at the very gravamen of plaintiff's case.

■ Section 2052 of the Code of Civil Procedure provides: "A witness may also be impeached by evidence that he has made, at other times, statements inconsistent, with his present testimony; but before this can be done the statements must be related to him, with the circumstances of times, places, and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them." In this case the trial court properly sustained the objection to the impeaching question because, in the incomplete form in which it was asked, it not only failed to meet the code requirements, but it was also unfair in that it omitted the very clause which was explanatory of the first part (itself of uncertain meaning) of the answer; appellant was not entitled to the benefit of part of the answer without the qualification, "maybe she was trying to get away". Indeed, the rule is that if the testimony of a witness upon a former hearing had been reduced to writing, the transcript must be shown to him, or in case he cannot read, or the language is unknown to him, it must be read to him before it may be used for the purpose of impeachment. (*People* v. *Larrios,* 220 Cal. 236 [30 Pac. (2d) 404]; *People* v. *Lambert,* 120 Cal. 170 [52 Pac. 307]; *People* v. *Hawley,* 111 Cal. 78 [43 Pac. 404]; *People* v. *Lee Chuck,* 78 Cal. 317 [20 Pac. 719]; *People* v. *Orosco,* 73 Cal. App. 580 [239 Pac. 82]; *People* v. *Reynolds,* 48 Cal. App. 688 [192 Pac. 343]; *People* v. *Lopez,* 21 Cal. App. 188 [131 Pac. 104]; *Doudell* v. *Shoo,* 20 Cal. App. 424 [129 Pac. 478]; 27 Cal. Jur., par. 136, p. 163.) The code section (sec. 2052) contemplates the showing to a witness of his former testimony, if it has been reduced to writing, so that he may read it before impeaching questions are asked or, if this cannot be done, relating to him, with circumstances of times, places and persons present, his former statements. The statute also expressly accords to the witness the right to explain his former statements.

■ Furthermore, even if the ruling of the trial court was erroneous, it is clear that the error was not prejudicial. First, because other impeaching questions were permitted.

For example, on cross-examination Taduko testified that decedent was at the *left* of the truck and, for impeachment purposes, counsel introduced a prior inconsistent statement made by her at the coroner's inquest to the effect that decedent was at the *right* of the truck. In other words, the cross-examination of Taduko was not restricted in any manner and a wide latitude was allowed appellant in the asking of all proper questions. Secondly, as appears from our discussion of appellant's first contention, the record contains ample evidence, aside from the testimony of Taduko, to sustain the verdict and judgment.

The judgment is affirmed.