[L. A. No. 16743. In Bank.—August 9, 1938.]

ROBERT J. WILSON, Respondent, v. EFFIE F. W. DAVIS, Appellant.

762

William Ellis Lady, Jerome H. Kann and Lois Preston Gilbert for Appellant.

Phil Jacobson and Harold Prudhon for Respondent.

BARNARD, J., *pro tem.*—The plaintiff filed for probate a will signed by one Emma H. Wilson, dated May 17, 1933, and naming him as principal beneficiary and as executor. Shortly thereafter the defendant filed for probate another will, dated October 24, 1933, naming her as principal beneficiary and as executrix. The plaintiff filed objections to the probate of that will upon the ground, among others, that it appeared that the date thereon had been altered. An interesting sidelight on this contention may be found in the opinion in *People* v. *Gilbert*, 26 Cal. App. (2d) 1 ·[78 Pac. (2d) 770]. On January 8, 1935, the defendant petitioned

for an order to compel the plaintiff to produce still another will supposed to have been signed by Emma H. Wilson under date of August 22, 1933. This will was never produced and there is a conflict in the evidence with respect to what became of it, and as to whether or not it named the plaintiff herein as a beneficiary.

While matters thus stood certain negotiations or transactions took place between the plaintiff and defendant, after which the plaintiff withdrew his petition for the probate of the will of May 17, 1933, and his objections to the probate of the will dated October 24, 1933, and in due course the estate in question was distributed to the defendant.

The plaintiff brought this action on the theory that the defendant, in consideration of his making the withdrawals just mentioned, had agreed to pay him the sum of $10,000, which she had failed to do. After a motion to strike large portions of an amended complaint had been granted that complaint still contained, in the first cause of action, allegations to the effect that on January 18, 1935, the defendant requested the plaintiff to withdraw his contest of the will dated October 24, 1933, and his petition to probate the earlier will; that in consideration of such withdrawals the defendant promised and agreed to pay him $10,000; and that on January 20, 1935, the defendant executed and delivered to him a written agreement wherein she agreed to pay him $10,000 in consideration of said withdrawals, which agreement was as follows:

"Jan. 20, 1935

"Dear Bob,

"I feel that you and I should settle our affairs between us without Lawyers So I trust you will not say anything to your Lawyers as well as myself.

"I will give you the equivalent of $10,000 upon the consideration that you will tell the truth about my Dear Sister Will of Aug. 22, 1933, as you know this will left everything to me.

"Bob you know I worked and put my money into everything Emma bought and we both agreed that it should go to me if anything happens to her.

"Lots of love to you and Margaret.

"EFFIE F. W. DAVIS."

It is further alleged that because January 20, 1935, fell upon a Sunday the plaintiff requested the defendant to ratify said agreement, which she did by executing the following agreement:

"January 21–1935

"The contract I made to Robert J. Wilson & dated Sunday Jan. 20–1935 I agree to ratify the said contract as of January 21–1935

"Witness: C. S. LUDLUM

"EFFIE F. W. DAVIS."

It is then alleged that the defendant has failed and refused to pay said sum or any part thereof. In a second count, for money had and received, a recovery of the same amount is sought.

The answer contains a general denial and sets up as a special defense that the plaintiff at one time had possession of another will dated August 22, 1933; that he destroyed this will without the consent of Emma H. Wilson; that after filing a contest to the will dated October 24, 1933, he "threatened to expose the conduct and physical condition of the said Emma H. Wilson unless this defendant submitted to certain demands of plaintiff then and there made to the extent of approximately $10,000"; that he further promised that he would refrain from carrying into effect these threats and "would refrain from doing or saying anything detrimental or harmful of and concerning this defendant" if she would give to him the papers mentioned in the amended complaint; and that the defendant would not have given these papers to the plaintiff except for such threats and promises. The answer then alleges that the plaintiff broke these promises by a series of things done by him on and after March 19, 1936, including the filing of this action; that the filing of this and other actions or proceedings by the plaintiff constituted a rescission of any agreement between them; and that the defendant by filing a notice of rescission acquiesced therein.

The action was tried before a jury. At the close of the evidence, with the court's consent, a second amended complaint to conform to the proof was filed which, among other things, restored many of the allegations which had previously been struck from the first cause of action. The jury returned a verdict in favor of the plaintiff for $10,000, judgment was entered accordingly, and the defendant has appealed.

Many points are raised by the appellant, most of which are based upon the theory that this action is founded entirely upon a written contract, being the writing dated January 20, 1935; that this agreement is *nudum pactum* since the consideration therein stated, to tell the truth, is in law no consideration at all; that evidence of any other consideration was not admissible; and that it necessarily follows that any agreement between the parties was without consideration. It is respondent's position, on the other hand, that the action involves an oral agreement between him and the appellant, which was evidenced by certain writings and memoranda signed by her and that a good consideration was both alleged and proved.

The appellant contends that the amended complaint failed to state a cause of action since the agreement on which it is based expresses a consideration which in law is not sufficient, and that the court erred in permitting the filing of an amended complaint to conform to the proof since this had the effect of entirely changing the cause of action. If the complaint merely failed to allege the existence of a valid consideration it might be an interesting question as to how an amendment conforming to proof of such a consideration could be said to entirely change the cause of action. While the amended complaint is far from being a model it does appear therefrom that the writing in question was included therein for the purpose of showing a confirmation of the agreement on the part of the appellant, and not for the purpose of alleging the consideration therefor. It is otherwise specifically alleged that an agreement was entered into between the parties two days before the writing was signed, by the terms of which the respondent was to withdraw his petition for the probate of a will and dismiss his contest of another will in consideration of the appellant's agreement to pay him the sum of $10,000. The case was largely, if not entirely, tried upon the issues raised by these allegations and those of the answer to the effect that the appellant's agreement to pay the money had been obtained by a form of duress. In so far as the point now raised is concerned, at least, the allegations of the amended complaint, after the motion to strike was granted, were sufficient to state a cause of action. The amendment later permitted by the court not only conformed to the proof but was in harmony with the real meaning and effect of the original allegations, which

affirmatively set forth a valid consideration, and the real cause of action sought to be alleged and thoroughly understood and combated by the other party was not changed or altered in any material respect. ■ If, as the appellant concedes, there was no valid contractual consideration stated, the usual rule applies and parol or extrinsic evidence was admissible to show the true consideration. (*County of Los Angeles* v. *Farnsworth*, 4 Cal. App. (2d) 516 [41 Pac. (2d) 577].)

Some fourteen specifications of error in connection with the admission or rejection of evidence are set forth, with the additional contention that the evidence is not sufficient to sustain the judgment. Several of these contentions are based upon the theory that it was error to permit evidence of any consideration other than the one mentioned in the writing which is set forth in the amended complaint. This point requires no further consideration in view of what has already been said. ■ A number of these objections are directed at the admission into evidence of the inventory, appraisement and decree of distribution in the estate of Emma H. Wilson, it being argued that these were introduced solely for the purpose of prejudicing the jury by showing the amount which the appellant had received from this estate, and, further, that the situation is comparable to an action for damages for personal injuries where "evidence of one's poverty is inadmissible". We are unable to find these exhibits in the record and are not advised as to their contents. However, this evidence was admissible for the purpose of showing that the respondent had carried out his part of the agreement, that he had given an adequate consideration, and possibly for its bearing upon his good faith in the matter. ■ Complaint is made of the refusal of the court to permit the appellant to introduce the report of the inheritance tax appraiser on the ground that this would have shown that a part of the property in the estate was held by the deceased in trust for the appellant, and that she in fact received under the will only about $30,000 instead of the $60,000 named in the inventory. This evidence was immaterial and could not have affected the result. ■ In a series of points the appellant complains of the refusal of the court to admit evidence offered by her, which it is said would have shown that the respondent did not "lay off" as he had agreed to do and would therefore have disclosed the fact that there had been a rescission.

The proffered evidence all went to acts taken by the respondent in an effort to enforce collection of his claim, after the estate had been distributed to the appellant and after she had broken her agreement with him, and was properly rejected. ■ Complaint is also made, in several instances, of the court's refusal to permit appellant's counsel to ask certain leading questions and to ask a particular witness concerning certain conversations. If any error here occurred it was cured, since the court later permitted another witness to testify fully as to all of these matters. The most obvious error of the court was in permitting the appellant to go too far afield in her introduction of evidence. The evidence amply sustains the judgment.

Practically all of the instructions given are attacked except those of a general nature. Most of these assignments of error are based upon the contention that the only consideration which could be considered was that expressed in the writing of January 20, 1935, an agreement to tell the truth, and that the other instructions, as to what constitutes a consideration, should not have been given. This requires no further discussion. ■ Several of the other instructions are said to be erroneous because the court "refused to permit defendant to show that plaintiff's contest was in bad faith". In none of these instances is it pointed out where the court refused to permit the appellant to make such a showing. The argument seems to be that bad faith conclusively appears because the respondent knew, because he once had it in his possession, of the existence of a will dated August 22, 1933, which was later than the one he offered for probate. There is evidence that respondent delivered this will to the appellant before the death of Emma H. Wilson and we are pointed to no evidence either that such a will was in existence at the time of her death or that the respondent had knowledge of such a fact. When the earlier will came into his possession it was his duty to produce it in the absence of definite knowledge that it was not her last will and the fact that he offered that will for probate does not, in itself, show bad faith upon his part. Not only is no evidence called to our attention which discloses that the giving of these instructions was erroneous, but the court adequately covered the matter of any possible bad faith upon the part of the respondent in another instruction which was given.

█ It is next urged that the court erred in refusing to give ten instructions offered by the appellant. Most of these were either obviously improper or not justified by the evidence, and only one need be here considered. That instruction reads as follows:

"The Court instructs the jury that in this case the defendant has alleged that there was no consideration for the claims of plaintiff. If you find from the evidence that the paper sued upon herein, to-wit, the one bearing the date of January 20, 1935, was given only in consideration as therein stated, that Robert Wilson tell the truth about the will of the sister of Mrs. Davis bearing date of August 22, 1933, then I charge you that there is no consideration for the reason that everyone is always required or at least expected to tell the truth of and concerning matters and things."

We are pointed to no evidence which would have supported a finding that this "paper" was given only in consideration that the respondent tell the truth about the will mentioned therein. The complaint alleged that two days before that writing was given the appellant agreed to pay the money in consideration that the respondent withdraw his petition to probate another will and allow a third will to be probated. The answer denied generally that there was any consideration for the agreement alleged in the complaint and specifically alleged that the writing was given as a result of duress and that a rescission had taken place. The case was largely tried on these issues. There is ample evidence that the respondent withdrew his objections and permitted the appellant to probate the will she had offered. Even if there were evidence to support a finding that the "paper" mentioned in the instruction was given only in consideration that the respondent tell the truth, the other consideration and agreement alleged in the complaint, and the evidence in support thereof, would still remain. In effect, this was a formula instruction purporting to tell the jurors that there was no consideration and they must find for the appellant if they found one particular thing to be true, when there was another issue, supported by ample evidence, which also required consideration. Even if it could be said that the agreement to tell the truth was the only consideration for the paper itself, and that that writing was therefore void, there was still the matter of a compromise which was alleged and proved. If it be assumed that some instruction along this line could properly have been

given such an instruction should have been so limited that a finding on that particular matter would not have prevented the jury from considering the other issues upon which the case was tried. Under the circumstances here appearing the question of whether or not a good consideration existed was not conclusively determined by the expression of a consideration which appears in the paper dated January 20, 1935.

The appellant contends that this judgment is invalid for the reason that at the time it was rendered she was, in law, an incompetent person and that no appearance was made by her guardian. It may first be observed that the record herein does not disclose any such situation. However, five days after the respondent's brief was filed a purported ''Supplemental Reporter's Transcript on Appeal'' was filed in the trial court and later presented for filing in the Appellate Court but the same has never been filed. If this supplemental transcript were to be considered it contains only a set of findings to the effect that this appellant is incapable of managing her property, an order appointing a guardian for her estate, both dated August 27, 1936, and an affidavit of her attorney filed in the trial court eleven days after the respondent's brief was filed herein. The general facts relied on are that while this action was pending and on August 27, 1936, the appellant was adjudged to be an incompetent person, that she filed a petition for restoration to competency, that a jury returned a verdict finding her competent on November 24, 1936, that the verdict was entered pursuant to section 664 of the Code of Civil Procedure within twenty-four hours thereafter, and that a formal judgment was not entered by the court until January 7, 1937, after the entry of the judgment here appealed from. Not only is there no proper record before us but it appears from the offered supplemental transcript that the appellant was found competent by the verdict of a jury on November 24, 1936, and from the record herein that about a month after that she testified at great length in the trial of this case. It further appears from the record that at the opening of the trial some question was raised as to whether a guardian for the appellant had been substituted and her attorney not only expressed a willingness to proceed but in effect stipulated that the question of her competency should not be raised, and that she should be considered competent for the purpose of this

trial. ▮ While the record is in an unsatisfactory condition, the burden of producing a proper record was upon the appellant, and in view of the absence of such a record and the stipulation which in effect waived the right to produce the proper evidence and properly call the matter to the attention of the court at a time when it could be corrected, it cannot now be urged for the first time that the minute entry of the jury's verdict was not technically a sufficient adjudication of her competency.

▮ It is urged that the court erred in refusing, on the first day of the trial, to permit the appellant to associate two additional attorneys to assist her counsel and in refusing to continue the trial until one of these additional attorneys should be free from other court engagements. The record shows that the court granted the motion as to the association of one of these attorneys and stated that he would make a similar order when the other attorney appeared. It further appears that no request for a continuance was made and the point is without merit. ▮ But one other assignment of error will be considered. The appellant moved, on the ground of bias and prejudice, to transfer the hearing of her motion for a new trial to some judge other than the one who had tried the action. At the hearing of that motion, before another judge, the appellant was refused permission to call the trial judge as a witness. The motion was heard on affidavits, including one by the trial judge, but the appellant argues that by a personal examination it might have been shown that said judge was "biased and prejudiced in his rulings" during the trial of the action. Aside from other considerations, the matter of making such a transfer was necessarily largely within the discretion of the judge hearing that motion. Neither abuse of discretion nor prejudice appears from anything which is brought to our attention.

While minor errors appear in the record the case was fairly tried, voluminous evidence was received which amply sustains the judgment, and we are far from convinced that a miscarriage of justice has occurred.

The judgment is affirmed.

Waste, C. J., Edmonds, J., Shenk, J., Curtis, J., Langdon, J., and Houser, J., concurred.

Rehearing denied.