[Civ. No. 6767. Third Dist. Apr. 30, 1943.]

M. J. LOPEZ, Appellant, v. LEE DEAN WISLER et al., Respondents.

Gumpert & Mazzera and Charles A. Zeller for Appellant.

Neumiller & Ditz, Irving L. Neumiller and Dudley W. Sheppard for Respondents.

ADAMS, P. J.—Appeal from a judgment for defendants entered upon the verdict of a jury in an action for damages for personal injuries arising out of an automobile collision.

On the day of the accident in question defendant Wisler, who was employed by defendant Doudell, was driving his employer's truck and trailer in a northwesterly direction on a paved highway between Stockton and Thornton, known as the Lower Sacramento Road, which road connects with the Thornton Road about five miles north of Stockton. At the point of intersection the Lower Sacramento Road makes a turn to the right and proceeds in a northeasterly direction toward Sacramento, while the road to Thornton continues almost due north. Just before the accident Wisler was driving his truck and trailer between 35 and 38 miles an hour, and prior to entering the intersection, by use of a mechanical arm on the truck, he signaled that he was not going to follow the curve of the Lower Sacramento Road to the northeast, but, instead, was going to continue northwesterly onto the Thornton Road.

He testified that he looked for traffic coming toward him from the direction of Lodi around the curve of the Lower Sacramento Road but saw no vehicles coming from that direction; that he then observed a car driven by Harry Price Palmer coming toward him from the northwest on the Thornton Road, Palmer at that time being about 450 feet away; that after seeing that there was no vehicle approaching the intersection other than the Palmer car he crossed the center white line of the Lower Sacramento Road and proceeded in practically a straight line into the Thornton Road; that he watched the oncoming Palmer car until he reached a point about 8 to 15 feet from the point of collision, at which point, for the first time, he saw the Hudson car driven by plaintiff coming from the northeast on the Lower Sacramento Road, at a speed which he estimated to be from 55 to 60 miles an hour. He saw that the Hudson car was leaving the curve of the Lower Sacramento Road and was cutting directly across in front of him and at right angles to the Thornton Road, and he applied his brakes, but could not avoid the oncoming Hudson car, the left side of which struck the right front corner of the truck so hard that the truck was knocked entirely across the Thornton Road to the west where it was turned over and completely around, and severed from the trailer.

At the time of the accident plaintiff Lopez was driving a new Hudson sedan and was accompanied by Neil Guyman, the Hudson agent at Stockton, who was demonstrating the car to Lopez. The latter testified that he was not familiar with this car, had never driven it before, and that the gear shift was on the steering wheel while his own car had the gear shift on the floor. He testified that he saw the truck approaching the intersection when it was approximately 200 feet away from him, that when it neared the junction of the Thornton Road it swerved to the left suddenly; that it was then approximately 100 feet from him; that he stepped on the gas and swerved to the right and the collision resulted; that he did not apply his brakes; that it all happened so suddenly that he thought his only alternative was to turn to the right; that he was unable to say to what speed he increased; that he did not see Wisler give a signal of his intention to turn, and that he did not look in the direction of the Thornton Road and did not at any time see

the car driven by Palmer which was then so close that it, too, was involved in the accident. There was a "side road" sign on his approach to the intersection and also two "slow" signs painted on the pavement. Though plaintiff testified that the truck was proceeding around the curve of the Lower Sacramento Road and suddenly made a quick left turn onto the Thornton Road, his testimony in this regard was refuted by witness Palmer who testified that the truck continued to travel in the same direction from the point where he first saw it to the point of collision, and that at the moment of impact it was headed in approximately the same direction in which it had been traveling.

Appellant makes two contentions on this appeal, the first that the trial court committed reversible error in curtailing plaintiff's cross-examination of defendant Wisler, and second, that the court erred in the giving of certain instructions. ■ As to the first contention, Wisler was called by plaintiff under section 2055 of the Code of Civil Procedure, and during his interrogation by Mr. Gumpert, plaintiff's counsel, he was asked at approximately what rate of speed the Lopez car was going when he first saw it. He said: "Well, my best judgment, he was traveling fast; I imagine around between 55 or 60." When asked if he remembered having talked with the traffic officer immediately following the accident, and said he did, he was then asked:

"You remember having had a conversation with him in which he asked you how fast the automobile of Mr. Lopez was going, the Hudson?

A. I don't remember if he asked me that or not. . . .

Q. State whether or not it isn't the fact that at that time and place—

Mr. Neumiller: Just a moment. If Your Honor please, the witness has stated he doesn't remember whether he said anything about the speed or not, and in view of that answer he obviously cannot answer the other question which counsel is prepared to put to him, and object to it upon that ground." Objection was sustained.

"Mr. Gumpert: Q. Well now, for the purpose of refreshing your recollection, Mr. Wisler, isn't it the fact and isn't your recollection refreshed by the fact, if it be a fact, that you told Officer Raleigh—following the accident—"

At this point further objection was interposed by counsel for defendant, and sustained by the court. Mr. Gumpert then stated:

"I don't want to go contrary to Your Honor's ruling, if Your Honor please, but I am going to lay a foundation for the question for impeachment.

MR. GUMPERT: Q. State whether or not following the accident at the scene of the accident on the night of September 30th, 1940, you did not tell Officer Homer Raleigh —Highway Patrolman of this county—"

Again objection was interposed and sustained.

Mr. Gumpert then asked:

"Well, will you deny that you had a conversation with Officer Homer Raleigh, irrespective of what speed you told him?

A. I had a conversation with him.

Q. Yes. And in that conversation will you deny that you told Officer Homer Raleigh, respecting the speed of the Lopez automobile—"

An objection that the question was argumentative was then interposed and sustained.

Mr. Gumpert then asked:

"Did you following this accident, Mr. Wisler, have a different opinion as to the speed at which Mr. Lopez' car was going, other than what you have testified to?"

An objection was again interposed by counsel for defendant and overruled, whereupon the witness answered:

"Only that he was going fast."     .

Mr. Gumpert then asked:

"Then it is your testimony that you did not tell the officer anything other than that the other car was going fast, is that correct?"

An objection was again sustained, whereupon Mr. Gumpert asked:

"Did you form the opinion as to the speed of Mr. Lopez' car before or after you hit?

A. After we hit.

Q. Yes. And how long after you hit did you form that opinion, which you now express, Mr. Wisler?"

Objection to this question being overruled, the witness answered that it was after the accident, but he did not know how long after. On direct examination by his own

counsel he was asked upon what he had based his estimate that the speed of the Lopez car was between 55 and 60 miles an hour, and said:

"Well, I based that after I had the accident, a little while after, after I had kind of realized what had happened, and the speed—when I first seen the car of Mr. Lopez, I had no more than seen it than it happened; and the damage that it did to the truck, by turning it around and turning it over; by that I realized he was driving at a high rate of speed, that is why I thought he was going between 55 and 60 miles an hour."

Thereafter he was again interrogated by plaintiff's counsel as follows:

"Mr. Gumpert: Q. Now then, you have testified on redirect examination of your counsel this morning that it was some time after the accident, after you had a chance to think over and look over the machines—the machine, the truck, that you formed this opinion as to the speed of the Lopez automobile, correct?

A. Yes.

Q. Yes. Was that before or after you had talked to the traffic officer that you formed that opinion?

A. I believe it was afterwards.

Q. It was after you had talked to the traffic officer?

A. Yes.

Q. So, that at the time you talked to the traffic officer, what was your opinion as to the speed of the Lopez automobile?

A. I didn't make no—

Mr. Neumiller: Now, just a moment. If Your Honor please, we object to that question; calling for opinion and conclusion of the witness.

The Court: Objection overruled. . . .

A. I don't believe I made any estimate of his speed right then.

Q. Well, isn't it the fact that at that time and place, at the scene of the accident on the night of September 30th, 1940, that Traffic Officer Raleigh of the California Highway Patrol asked you this question: 'Approximately how fast was the Lopez automobile going when you saw it?' And didn't you . . . And didn't you answer 'Approximately 35 miles per hour'?"

Objection having again been interposed and sustained, Mr. Gumpert stated:

"Now, if Your Honor please, we intend to put Mr. Raleigh on. That is proper impeaching evidence, if Your Honor please, in order to lay the foundation. . . .

THE COURT: The objection will be sustained. He said he didn't remember."

Subsequently, without objection, the traffic officer, Raleigh, called by plaintiff, testified that he had a conversation with Wisler after the accident, that he asked Wisler how fast the Hudson automobile was going, and that he answered, approximately 35 miles an hour.

Appellant contends that in spite of the fact that the testimony of Raleigh was admitted to impeach Wisler, plaintiff was nevertheless prejudiced by the rulings of the trial court as above set forth, his argument, as we understand it, being that he should have been permitted to exact from the witness Wisler a direct yes or no answer as to whether he stated to Raleigh that Lopez was traveling between 30 and 35 miles per hour. He argues that if Wisler had admitted that he did so state, his admission would have been affirmative evidence that Lopez' speed was but 30 or 35 miles per hour; and that his denial would have justified the jury in disbelieving the rest of his testimony. As to the former contention we cannot agree that if Wisler had admitted the making of the statement to Raleigh this admission would have constituted affirmative evidence that Lopez' speed was 30 to 35 miles per hour. It has been held in numerous cases that when a witness is impeached by proof of prior inconsistent statements the effect is merely to discredit him as a witness, and that the former statements made by him are incompetent for any other purpose. (*Albert* v. *McKay & Co.*, 174 Cal. 451, 456 [163 P. 666]; *Mattson* v. *Maryland Casualty Co.*, 100 Cal.App. 96, 98 [279 P. 1045]; *Fortenbery* v. *Riddle*, 129 Cal.App. 529, 530 [18 P.2d 996]; *Goodwin* v. *Robinson*, 20 Cal.App.2d 283, 288 [66 P.2d 1257]; *Gajanich* v. *Gregory*, 116 Cal.App. 622, 629 [3 P.2d 389]; *Overton* v. *Harband*, 6 Cal.App.2d 455, 462 [44 P.2d 484]; 28 R.C.L. 633.) Furthermore, Wisler said he did not see the Hudson car until it was within 15 feet of him, and his estimate that its speed was then 55 or 60 miles

an hour is entirely consistent with Lopez' testimony that when he saw Wisler turn he "stepped on the gas."

As to the argument that if Wisler had denied making the statement the jury would have been justified in disbelieving the rest of his testimony, we fail to see how his admission of the former statement—that is, in effect, his self-impeachment—would have a greater tendency to discredit him than the testimony of the impeaching witness would have. Furthermore, Wisler did, in effect, deny the making of such statement when he said that he did not remember whether the traffic officer asked him how fast the Hudson car was going and also when he said "I don't believe I made any estimate of his speed right then." It is noted, too, that plaintiff's counsel stated twice that his reason for asking the questions to which objections were sustained, was to "lay a foundation for the question of impeachment," and that he intended to call Mr. Raleigh to impeach Wisler. This he was permitted to do.

Appellant puts his principal reliance upon *People* v. *Brady,* 56 Cal.App. 777 [206 P. 668], where the court reversed a judgment of conviction on the ground that defendant's cross-examination had been prejudicially curtailed. But that case is clearly distinguishable as no testimony of prior inconsistent statements by the complaining witness was there admitted.

But whether the trial court erred or not in restricting the cross-examination of Wisler, we are satisfied that there was no such prejudicial error as would justify reversal. In *Wilson* v. *Davis,* 11 Cal.2d 761, 769 [81 P.2d 971], where complaint was made that the court's refusal to permit counsel to ask a witness concerning certain conversations was reversible error, the Supreme Court said that if any error occurred, it was cured since the court later permitted another witness to testify fully as to these matters. (Also see *Johnson* v. *Ulrey,* 201 Cal. 456, 469 [257 P. 505]; *Berkowitz* v. *Tyderko, Ltd.,* 13 Cal.App.2d 561, 565 [57 P.2d 173]; *Umemoto* v. *McDonald,* 6 Cal.2d 587, 591-593 [58 P.2d 1274]; *Fortenbery* v. *Riddle, supra.*)

Appellant's second contention is that the trial court erred in giving the following instruction:

"The operator of an automobile is bound to anticipate that he may meet others at any point on the highway and

he must, in order to avoid a charge of negligence, keep a proper lookout for them and keep his machine under such control as will enable him to avoid a collision with another person using proper care and caution, and I also instruct you that if the situation requires, he must slow up and stop.

"I instruct you that if you find that plaintiff, M. J. Lopez, failed to keep a proper lookout for other cars on the, highway or failed to keep his machine under such control as would enable him in the exercise of ordinary care to avoid a collision with another person using proper care and caution, or failed in a situation which required slowing up and stopping, and if you find that such failure, if any, in all or any one of these instances, was the, or a, proximate cause of said collision, then you must not award any damages to the plaintiff, and your verdict must be for the defendants."

It is urged that this "formula" instruction took from the jury the question of fact as to whether or not any failure in a situation requiring slowing up and stopping was or was not contributory negligence upon the part of Lopez. It is the statement of the instruction in the alternative, particularly the portion of it regarding slowing up and stopping, to which appellant makes objection. He could hardly object to what preceded this since at his request the court gave three similar instructions as to the duty of Wisler. Appellant says that this instruction imposed an absolute requirement, as a matter of law, upon Lopez to slow up and stop. We do not so read the instruction, for it says that if Lopez failed in a situation "which required slowing up and stopping," and his failure to do so, if any, was a proximate cause of the collision, he could not recover. It was left to the jury to decide whether there was a situation which required slowing up and stopping, and the instruction did not state that his failure to do so under the circumstances of the case constituted negligence as matter of law. The portion of the instruction referred to might have been better had the words "in the exercise of ordinary care" been repeated before the words "required slowing up and stopping," but they were used in the preceding phrase of the sentence, and the court also instructed the jury elsewhere on the doctrine of contributory negligence.

In view of all of the facts in the case, and the provisions of section 4½ of article VI of the Constitution, we cannot say that the giving of this instruction resulted in a miscarriage of justice. (*Reuter* v. *Hill,* 136 Cal.App. 67, 76 [28 P.2d

390]; *Mahoney* v. *Murray*, 140 Cal.App. 206, 209 [35 P.2d 612]; *Christiansen* v. *Hollings*, 44 Cal.App.2d 332, 346 [112 P.2d 723]; *Walsh* v. *Maurice Mercantile Co.*, 20 Cal.App.2d 45, 48 [66 P.2d 181]; *Klenzendorf* v. *Shasta Union High School District*, 4 Cal.App.2d 164, 171 [40 P.2d 878]; *Casalegno* v. *Leonard*, 40 Cal.App.2d 575, 579 [105 P.2d 125]; *Godfrey* v. *Brown*, 220 Cal. 57, 62 [29 P.2d 165, 93 A.L.R. 1072]; *Ward* v. *Read*, 219 Cal. 65, 68 [25 P.2d 821]; *Hilton* v. *Carey*, 41 Cal.App.2d 375, 378 [106 P.2d 944].)

The other alleged error relied upon by appellant is the refusal of the court to give the following instruction requested by him.

"When a person is in imminent danger, without fault on his part, he is not called upon to exercise that intelligence and judgment he would be expected to exercise were he not in danger. So if such a party in imminent danger has two ways open to him, but has not the time to stop and investigate, and determine which is the right or safe way, and which is the wrong or unsafe way, his choosing the latter is not, under the circumstances, negligence on his part. So if you should find from the evidence in this case that Lopez, without fault on his part, found himself in imminent danger or had reasonable ground to believe that he was in such danger, and had not time to stop and consider and determine the better course to pursue, then you are instructed that his choosing to turn one way instead of the other in such emergency was not negligence on his part even though in so doing he may have ridden right against Wisler's approaching truck instead of away from it."

Instead, the court instructed as follows:

"When a person finds himself suddenly placed in a position of peril, without fault on his part, he is not called upon to exercise that intelligence and judgment he would be expected to exercise were he not in imminent danger. If such a party in imminent danger has not the time to consider and determine which is the better or safer course to pursue and which is the unsafe course, his choosing the unwise or unsafe way is not necessarily negligence."

The instruction in the form suggested by appellant assumes that plaintiff had but two courses open to him when he found himself in a position of peril. This is a false assumption. He might have put on his brakes and attempted to stop, which, if he was traveling at the rate of speed claimed by him, he should

have been able to do (California Vehicle Code, sec. 670); he might have turned to the left or turned to the right either applying his brakes or accelerating his speed. It also assumes that a party in imminent peril cannot be deemed negligent unless he has time to *stop and investigate* and determine what is the right or safe course to pursue before acting. Neither stopping nor investigating is necessarily preliminary to determining the safe course to pursue. If a driver has time to stop and investigate he cannot be said to be in imminent peril. Furthermore, the instruction as framed by appellant in effect would have told the jury that as a matter of law, if plaintiff did not have time to stop and investigate, his turning to the right instead of to the left was not negligence. Such an instruction would have been improper, since it would have taken from the jury the determination of whether what he did was or was not reasonable under the circumstances. He testified that when he saw the truck swerve to the left he pulled to the right and "stepped on the gas", with the idea that he was going to try to get around in front of the truck; that it happened so suddenly he *"thought"* the only alternative was to turn to his right. He thus states that he did think, and did not act on impulse alone.

The contention that the course chosen by him, as a matter of law could not be considered negligence is unsound. It is said in 19 Cal.Jur., pp. 598-600:

"One who, without negligence upon his part, is suddenly confronted with imminent danger or seeming imminent danger is not required to exercise that degree of care and skill which is required in the commission of an act after careful deliberation; he is required to act only as a reasonably prudent man would act under similar circumstances. Accordingly, where a situation requires an immediate choice between alternative courses of conduct, negligence may not be inferred from an unwise choice, *if a reasonable man, under similar circumstances, would choose similarly*. And under such circumstances one may be excused if he loses his presence of mind, momentarily forgets, errs in judgment, or omits cautionary measures which should otherwise have been taken, even though the effect of his conduct is to cause him to encounter the danger sought to be avoided. Whether a person in a position of imminent danger acted reasonably is a question of fact for the jury, but in determining the question, conduct must be viewed in the light of the confusion and excitement of the moment and not in view of the circum-

stances and surroundings of one not in danger.'' (Emphasis ours.)

In *Van Fleet* v. *Heyler*, 51 Cal.App.2d 719, 732 [125 P.2d 586], where the court, at the request of defendant who was relying upon the sudden peril rule, gave an instruction which was held erroneous, the court said, page 732:

"As a statement of the sudden peril rule this instruction is erroneous. It excuses the defendant if he used *his* best judgment and followed the course of action which *seemed to him* best suited to prevent a collision. One who is subject to this rule is required to act as a reasonably prudent person would act under similar circumstances. (19 Cal.Jur. 598; *Mortensen* v. *Fairbanks*, (1934) 1 Cal.2d 489, 492 [35 P.2d 1030].)''

In *Mortensen* v. *Fairbanks*, 1 Cal.2d 489 [35 P.2d 1030], a portion of an instruction directed that if the jury should find that in an effort to extricate himself from danger plaintiff "failed to act in such manner as a careful and prudent person would have done under the circumstances, then it was not negligence or contributory negligence on his part in driving ahead in an effort to get out of the path of the car driven by the defendant.'' It was concluded that this instruction was erroneous in that it informed the jury that one in imminent peril need not exercise reasonable care, and that it took from the jury the issue as to the reasonableness of plaintiff's conduct under the circumstances. The court said, page 492:

"We are of the opinion that the instruction is objectionable on both grounds. The rule is now well settled that a person suddenly confronted with an unexpected danger, without any fault on his part, is only required to use such means for avoiding the danger as would be used by a person of ordinary prudence under similar circumstances, and he is not held to that strict accountability which would require that the course chosen be the most judicious one. (*McPhee* v. *Lavin*, 183 Cal. 264, 268 [191 P. 23]; *McLaughlin* v. *Los Angeles Ry. Corp.*, 180 Cal. 527, 532 [182 P. 44]; *Tousley* v. *Pacific Electric Ry. Co.*, 166 Cal. 457, 463, 464 [137 P. 31]; *Carnahan* v. *Motor Transit Co.*, 65 Cal.App. 402, 411 [224 P. 143].) The reasonableness of his effort to avoid the injury after discovery of the danger is a question of fact for the jury, to be determined by them in view of all the circumstances. (*Hoff* v. *Los Angeles Pac. Co.*, 158 Cal. 596, 601 [112 P. 53]; *Kearney* v. *Castellotti*, 55 Cal.App. 541, 544 [203 P. 1029].)

"The quoted portion of the instruction complained of informed the jury, in effect, that plaintiff could not be found guilty of contributory negligence even though in his effort to extricate himself from an apparent danger by driving ahead he had failed to act in such a manner as a careful and prudent person would have acted under similar circumstances. This is obviously a misstatement of the law as to the care required of one confronted with a situation of imminent peril and, in addition, withdrew from the jury the issue as to the propriety and reasonableness of plaintiff's conduct under the circumstances."

██ Appellant's instruction as proposed was properly refused; and as modified and given by the court was not erroneous in directing that if a party in imminent danger has not the time to consider and determine which is the better or safer course to pursue and which is the unsafe course, his choosing the unwise or unsafe way is not *necessarily* negligence. Whether the course pursued by plaintiff was or was not that of a reasonably prudent man under the circumstances was thus left to the jury, and properly so. (*Jesse* v. *Giguiere,* 24 Cal.App.2d 160, 165 [74 P.2d 310]; *County of Alameda* v. *Tieslau,* 44 Cal.App. 332, 336-7 [186 P. 398]; *Drury* v. *Los Angeles Ry. Corp.,* 102 Cal.App. 58, 65 [282 P. 525].)

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 28, 1943.