[Civ. No. 14486.   Second Dist., Div. Three.   Nov. 24, 1944.]

THOMAS E. KING, Appellant, v. CITY OF LONG BEACH, Respondent.

[Civ. No. 14487.   Second Dist., Div. Three.   Nov. 24, 1944.]

CARL M. HANKINS, Appellant, v. CITY OF LONG BEACH, Respondent.

2

Eugene S. Ives, Kenneth A. Davis and John O. Akin for Appellants.

Irving M. Smith, City Attorney, Dewey L. Strickler and Clifford E. Hayes, Deputies City Attorney, for Respondent.

FOX, J. pro tem.—The plaintiffs, Thomas E. King and Carl M. Hankins, filed separate actions for damages against the city of Long Beach. The cases were consolidated for trial, and also on appeal. These cases arose out of an accident which occurred in the city of Long Beach during the early morning of February 25, 1942, when an automobile owned and operated by plaintiff King, and in which plaintiff Hankins was riding, collided with an automobile owned and driven by Engebret Larson, a police sergeant of said city. As a result of the accident both plaintiffs were injured and the police sergeant killed. The actions were tried by the court, sitting without a jury, and judgment rendered for the defendant city in each case. The plaintiffs have appealed.

The evidence showed that on the said date the police department of the city of Long Beach received from the United States Army an air raid blue alert at 2:23 a. m., and an air raid red alert at 2:28 a. m. Immediately thereafter an air raid warning was sounded in the city of Long Beach. After the police department received the blue alert, Sergeant Larson received a call at his home to report for duty at the fire station located at 2540 Santa Fe Avenue. The accident occurred just prior to 3:02 a. m. and just prior to an anti-aircraft barrage which was fired on said morning.

The plaintiffs were employed at California Shipbuilding Corporation. They left their place of employment at about 2:30 on said morning and went to King's car. He drove his car from the parking lot and entered Ford Avenue and traveled north on said avenue to Anaheim Street, and east on Anaheim Street until he came to a stop in the traffic line on said street. At that time a soldier told him to turn off his lights. King had been driving his car in the third lane of traffic from the curb. When he reached Anaheim Street the street lights were on but they were turned off while he was driving east on that street. After being stopped for a few minutes the traffic ahead of the King car began to move forward. A soldier came along and told King to ''get going.'' King then continued east on Anaheim Street to its intersection with Santa Fe Avenue where he turned north on said avenue. He drove north on Santa Fe Avenue at a speed of approximately 20 to 25 miles per hour, traveling next to the center line of the avenue. At Pacific Coast Highway he made a boulevard stop and waited for a truck and trailer to pass

through the intersection. After crossing said highway King traveled at a speed of approximately 25 miles per hour until he passed a point north of the aforesaid fire station, at which time he collided with the car driven by Sergeant Larson. The King car was near the center line while the Larson car was to the left of the center line. Both cars were being driven without lights. The night was dark but clear. The street lights on Santa Fe Avenue were not lighted. King testified that he saw cars traveling south on Santa Fe Avenue but could not tell whether the cars were police cars or taxis, as the lights on top of the cars were not lighted. When asked how far away the cars were when he could see them he said: "You would have to be right on them before you would see them." Plaintiff Hankins testified he could see about 50 feet. Witness Smith, a passenger in a truck driven by witness Pamplin, which was traveling about 10 miles per hour and which was passed by King just before the accident, testified that he could see ahead but "A very short distance." When asked if he could see 25 feet ahead, he replied: "I don't believe I could see very well that distance." He further testified: "I had my head out of the window on the right side watching the edge of the road so we could—directing Pamplin so we could stay right at the edge of the road. That was the object of it." Plaintiff King drove approximately 1.4 miles from the place where he stopped in the traffic line on Anaheim Street to the point where the collision took place on Santa Fe Avenue. In that distance he crossed some 17 intersecting streets.

Prior to the date of the accident the city of Long Beach had enacted what was commonly known as a "Blackout Ordinance" which required, in the event of a blackout, all vehicular traffic (with certain exceptions not here involved) to stop at the side of the highway and off the main traveled portion thereof until the "all clear" signal was given. Such signal had not been given when the accident happened.

### The King Appeal

In the King case the trial court, in addition to finding that King violated the blackout ordinance, found that he "drove, operated and propelled his automobile in a northerly direction on Santa Fe Avenue in a negligent, careless and reckless manner, without lights, at a speed of approximately 25 miles per hour, and without regard for his own safety; that the

night was dark and no street lights were lighted along Santa Fe Avenue; that the said negligent, reckless and careless conduct on the part of the plaintiff proximately contributed to and caused the collision between the cars driven by the plaintiff and Engebert Larson and the resulting injuries and damages sustained by the plaintiff.''

The first question is: does the evidence support this finding? In our opinion it does.

The evidence is undisputed that King was driving his car without lights on a dark night, when the street lights were not burning, at a speed of around 20 to 25 miles per hour. This is sufficient to support the court's finding of negligence on the part of plaintiff King. Also, the inference is readily deducible from the facts herein recited that King's negligence proximately contributed to the accident in accordance with the trial court's finding. This bars any recovery on his part.

Plaintiff King seeks to avoid the legal consequences of his acts on the theory that the civil power had been superseded by the military and as a consequence he was driving pursuant to orders from the military authority. The answer to this proposition is that there is no evidence in the record that the military authority had made any order suspending civil power or prohibiting or regulating the operation of motor vehicles during the period of an air raid alarm. The trial court may well have concluded that the directions of the soldier to the operators of the vehicular traffic on Anaheim Street to turn out their lights and later to plaintiff King to ''get going'' were simply as an assistance to the civil authorities and in order to clear the street, which is a main thoroughfare, for military and other emergency traffic. In this connection it must be remembered that King's car was in the third lane from the curb. It was virtually in the center of the street and would have constituted a traffic hazard standing there without lights. The reasonable interpretation of the soldier's direction, and which is consistent with the trial court's findings and judgment, is that King was to get his car out of the way and to a place of safety which he had ample opportunity to do. There is no basis for saying that the direction of the soldier to ''get going'' gave King any legal right to drive home, a distance of more than 1.4 miles, on a dark night without lights, at a speed of approximately 25 miles per hour.

King also seeks to justify his conduct on the ground

that other motorists were, on that occasion, also driving without lights. The evidence, however, does not disclose that other motorists drove at the speed at which King was driving prior to and at the time of the accident, and if they had been their negligence would not have excused his own.

In considering the sufficiency of the evidence to support the trial court's finding we have done so without relation to subdivision (a) of section 618 of the Vehicle Code which requires every vehicle on the highway (with certain exceptions not here applicable) at any time from a half hour after sunset to a half hour before sunrise to have sufficient light to render clearly discernible any person or vehicle on the highway at a distance of 200 feet. Of course the violation of a statutory provision constitutes negligence as a matter of of law (*Garns* v. *Halpern* (1924), 193 Cal. 193, 196 [223 P. 545]; *Rapolla* v. *Goulart* (1930), 105 Cal.App. 417, 424 [287 P. 562]; *Hudgins* v. *Standard Oil Co.* (1935), 5 Cal.App.2d 618, 622 [43 P.2d 597]; *Linde* v. *Emmick* (1936), 16 Cal.App.2d 676, 683 [61 P.2d 338]).

Since we find sufficient evidentiary support for the court's findings and judgment it becomes unnecessary to consider other questions raised by counsel.

### The Hankins Appeal

In the Hankins case after repeating the finding herein quoted as to the manner in which King drove his car on the occasion in question, the court also found that "the plaintiff (Hankins) did not protest to the defendant, Thomas E. King (Hankins, in his action, joined King as a defendant); that the plaintiff had an opportunity to alight from the automobile driven by the defendant, Thomas E. King, but that the plaintiff did not do so; that the carelessness and negligent conduct of the plaintiff in continuing to ride in the automobile driven by the defendant, Thomas E. King, proximately caused and contributed to the injuries sustained by the plaintiff and the damages resulting therefrom."

The principal question on this appeal, also, is: does the evidence support this finding? In our opinion it does.

Plaintiff Hankins was a guest, and not a passenger for hire, in King's car—consequently the negligence of the latter may not be imputed to the former. (*Baldwin* v. *Pacific Electric Ry. Co.* (1929), 208 Cal. 364, 368 [281 P. 380]; *Cate* v.

*Fresno Traction Co.* (1931), 213 Cal. 190, 201 [2 P.2d 364].)
However, the evidence shows that Hankins continued to ride a distance of 1.4 miles in the automobile driven by King, and that he did not make any protest. He was apparently apprehensive about King continuing to drive for he testified that ''. . . I asked him if he had driven before like this and he said yes.'' Hankins made no further comment about proceeding, nor did he object to the speed at which King was driving in the darkness and without lights. Hankins had an opportunity to get out of the car when he ascertained, at the place where they were stopped on Anaheim Street, that King contemplated driving on for there was some delay in getting started because, according to King's testimony, he had locked his car and removed the key while standing there and had to have the assistance of the soldier's flashlight before he could unlock his car and get it started. Hankins also had an opportunity to alight from the car when King stopped at the intersection of Santa Fe Avenue and Pacific Coast Highway to allow a truck and trailer to pass through the intersection.

Hankins was bound to exercise ordinary care for his own safety. Whether or not he exercised such care is primarily a question of fact. The trial court has decided that question against the plaintiff. Viewing the evidence herein recited, together with the inferences which may reasonably be drawn therefrom, most favorably to the respondent, as we must on appeal, we conclude that there is substantial evidentiary support for the trial court's finding. Under such circumstances the finding may not be disturbed on appeal. This finding of contributory negligence on the part of plaintiff Hankins bars any recovery by him.

The judgment in each case is affirmed.

Shinn, Acting P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied December 12, 1944, and appellants' petition for a hearing by the Supreme Court was denied January 22, 1945. Carter, J., voted for a hearing.