[Civ. No. 14739. Second Dist., Div. Three. Oct. 30, 1945.]

CECELIA S. LARSON et al., Appellants, v. THOMAS E. KING, Respondent.

Kenneth Sperry for Appellants.

Eugene S. Ives for Respondent.

SHINN, J.—Plaintiffs and appellants herein are the widow and minor children of Engebret Larson, who met his death in a collision between his automobile, driven by himself, and a car owned and operated by one King. They appeal from a judgment after verdict in an action for wrongful death. The fatal accident occurred during a blackout, following air raid warnings, in the city of Long Beach, at about 2:50 a. m. on February 25, 1942. Mr. Larson was a police sergeant of the city of Long Beach and was driving his own car from his home to a fire station located on Santa Fe Avenue, after an air raid alarm signal. Under orders theretofore issued by the chief of police, directing the movements of police officers in such emergencies, it was Larson's duty to proceed to the fire station. King and his passenger, Hankins, were returning home from work at the California Ship Building Corporation. Following the accident, King and Hankins filed separate actions against the city of Long Beach; judgments were entered against them, they appealed to this court, and the judgments were affirmed (*King* v. *Long Beach,* 67 Cal.App.2d 1 [153 P.2d 445]).

Santa Fe Avenue is a 60-foot paved highway. Larson was driving in a southerly direction and King in the opposite direction. The night was clear but dark; all automobile and other lights were out and there was testimony

that objects on the highway could not be seen at a greater distance than 60 feet. The automobiles came to rest after what was practically a head-on collision, their rear ends being about on the center line of the street and the front ends 4 or 5 feet easterly thereof. Defendant testified that his car had been traveling northerly about 2 feet easterly of the center line, and around 20 miles an hour, while he was using the white line as a guide. Larson was killed instantly; King and Hankins were rendered unconscious.

Plaintiffs' principal contention is that there was error in the giving of instructions and also in the refusal to give others which they requested. The instructions covered the general principles of negligence and, in addition, the provisions of certain sections of the Vehicle Code and some sections of a blackout ordinance of the city of Long Beach.

█ The jury were properly instructed, at the request of both parties, as to the requirement of section 510, Vehicle Code, that vehicles must not be driven at a greater speed than is reasonable or prudent under the circumstances.

█ At defendant's request, the court instructed in the language of section 525 of the Vehicle Code, which requires vehicles, except under certain conditions, to be driven on the right half of, and as close as practicable to the right-hand curb or edge of, the roadway, one of the stated exceptions being "When placing a vehicle in a lawful position for, and when such vehicle is lawfully making a left turn." Section 544(a) also was read, this section providing that a vehicle shall not be turned unless and until it can be done with reasonable safety and after the giving of an appropriate signal in the event any other vehicle may be affected by such movement. As to section 544(a), the qualification was added that the section does not mean that before making a turn the driver must know that there is absolutely no possibility of accident, but only that he must use ordinary care under the circumstances. Error is claimed in the giving of these instructions, the argument being that there was no evidence that the deceased violated either of the sections. In view of defendant's argument that Larson was driving on the left-hand side of the road, which had a reasonable basis in the evidence as to the position of the cars when they came to rest, and of opposing counsel's argument that if Larson were so driving it was in the execution of a left-hand turn as he approached the fire station, where he in-

tended to stop, it was not error to instruct in the language of the sections.

No instruction was given based upon section 618 of the Vehicle Code, which forbids the driving of vehicles at certain hours without adequate headlights. Apparently neither plaintiffs nor defendant relied upon this section. However, plaintiffs introduced and read to the jury provisions of the city's blackout ordinance, certain of which admittedly were operative at the time of the accident, that is to say, after the air raid red alert had been received and before the all-clear signal had been given. Section 717.8 of the ordinance reads in part as follows:

"(a) At the commencement of a period of air raid alarm, the operator of any vehicle, whether automobile or otherwise, shall forthwith bring such vehicle as far as possible to the side of the street, road or highway, off the main traveled portion thereof, and the operator of such vehicle and the operator of any street car or train, shall bring such vehicle, street car or train to a stop clear of any crossing, intersection, fire hose, fire plug, hospital or other emergency depot or area, and during the hours of darkness shall extinguish all lights therein and thereon and said vehicle, street car or train shall remain so situated during the period of air raid alarm, unless directed or ordered to move by a peace officer, highway patrolman or fireman."

The provisions of this section were, by the following section, made inapplicable to blackout emergency vehicles, which included army, navy and, while on actual duty, California state guard vehicles, vehicles of voluntary personnel actually going to or from posts of duty in the operation of the aircraft warning service of the Fourth Interceptor Command, and vehicles certified by the sheriff or district attorney of the county, state highway patrol, chief of police, fire chief, or city prosecutor "when within the respective territorial jurisdictions of the certifying office, as being essential to the preservation of the public peace and safety or to the dissemination of public information or to the national defense." Also excepted were authorized emergency vehicles as defined by sections 44 and 44.1 of the Vehicle Code, which include vehicles privately owned, but only when the same have received a permit from the Director of the Department of Motor Vehicles, carry thereon distinguishing signs of a type approved by the director, when operated in re-

sponding to emergency calls or in patrol duty or in the pursuit of actual or suspected violators of the law and when the state, city, or county has failed to furnish a publicly owned vehicle for the purposes above stated. At the trial it was claimed by plaintiffs that defendant King was driving his car in violation of the ordinance and that Larson was not violating the ordinance. Defendant contended that he was driving lawfully while Larson was not. The court was not asked to determine whether the Larson car, under the admitted facts, was a blackout emergency vehicle as defined by the ordinance and thus excepted from the provisions thereof. Neither was the court asked to rule whether King, as he unsuccessfully contended in *King* v. *Long Beach, supra,* was proceeding under orders of the military which took precedence over the ordinance. Those questions were left to the jury, as were also the questions whether, if either or both drivers were found guilty of violating the ordinance, such violation or violations constituted negligence. Since neither the plaintiffs nor defendant requested the court to give any instruction to the effect that the manner in which deceased or King was driving would or would not constitute a violation of the ordinance, neither can complain that those questions were submitted to the jury as questions of fact. It would be idle to speculate as to the findings of the jury upon the several issues of fact if there is evidence to support any one finding which supports the verdict. It may be that the jury found, as plaintiffs contended, that King was driving in violation of the ordinance and was guilty of negligence; also that the Larson car was a blackout emergency vehicle and not subject to the restrictions of the ordinance, but even then it could properly have returned a verdict for the defendant, since there was evidence from which it could be inferred that the Larson car was being driven on the wrong side of the street. This would have justified a finding that he was guilty of contributory negligence. The questions presented on the appeal would not be answered by any decisions we might make as to whether Larson or King was, or whether both were, under the undisputed facts, driving in violation of the ordinance.

 Plaintiffs requested three instructions. The first of these reads as follows:

"The violation of a penal statute or ordinance is presumptive evidence of negligence. However, such presumption

may be rebutted by a showing of facts and circumstances which excuse or justify the violation of such statute. If you believe from a preponderance of the evidence that the deceased Larson was suddenly confronted with an emergency which necessitated the use by him of his automobile in the manner as shown by the evidence, and that such use was reasonably necessary in order to perform his duties as a police officer and to protect the lives and property of the residents and citizens of the city of Long Beach, and further that in so doing he was exercising reasonable and ordinary care under all of the circumstances, such conduct on his part would not amount to contributory negligence so as to bar a recovery on the part of the plaintiffs in the case at bar." The second one, presupposing a finding that decedent acted in violation of the law, stated that if his acts "were necessarily committed by him in the performance by him of a paramount duty to protect life and property during an emergency, and that he acted with ordinary prudence under all of the surrounding circumstances, such conduct on his part would not amount to negligence," and the third one stated that a technical violation of a penal statute or ordinance, if found to be fully justified by the surrounding circumstances and the emergency, would not alone constitute contributory negligence. Although these instructions were refused, their substance was embodied in an instruction which the court gave, of its own motion, which reads as follows:

"In connection with these statutes and with this ordinance, I will instruct you:

"Conduct which is in violation of any of the statutes just read to you or of the ordinance read to you by Mr. Sperry this morning, constitutes negligence per se. This means that if the evidence supports a finding, and you do find, that a person did so conduct himself, it requires a presumption that he was negligent. However, such presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence. In this connection, you may assume that a person of ordinary prudence will reasonably endeavor to obey the law and will do so unless causes, not of his own intended making, induce him, without moral fault, to do

otherwise." The only criticism which appellants direct toward the instruction is that it was less favorable to their contentions than the ones they requested. The instruction allowed the jurors the widest latitude to give effect to individual opinions as to what circumstances would justify a failure to obey the law, that is to say, what circumstances would justify a conclusion that failure to obey the law was not in itself negligence. It gave plaintiffs the full benefit of their claim that Larson was not guilty of negligence under the circumstances, even if he was violating the ordinance. Although the instruction was equally favorable to the contention of defendant that he also was not guilty of negligence in disobeying the provisions of the ordinance, plaintiffs cannot complain of this fact; indeed they do not complain. Inasmuch as the instruction which was given was in conformity with those which plaintiffs had requested, we have no occasion to express our opinion whether the instructions requested and the one which was given embodied a correct statement of the law.

Another instruction given read as follows: "At the outset of this trial, each party was entitled to the presumptions of law that every person takes ordinary care of his own concerns and that he obeys the law. These presumptions are a form of prima facie evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. When there is other evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the presumption (and any evidence that may support the presumption), to determine which, if either, preponderates. Such deliberations, of course, shall be related to, and in accordance with, my instructions on the burden of proof." Appellants criticize the instruction in several respects. It is said: "In other words, the instruction left the jury to rely upon their own knowledge of the law; whereas, the duty of supplying the law applicable rests upon the trial court [citing *Sills* v. *Forbes* (1939), 33 Cal.App.2d 219 (91 P.2d 246)]." But the only law, consisting of the sections of the Vehicle Code and the ordinance to which the instruction related, was fully stated to the jury and we think the instruction was not subject to this criticism. It is next insisted that the instruction allowed the jury to apply the presumption to the conduct of King, who, it is contended, testified as to his own conduct, and therefore was not entitled

to the benefit of the presumption. (*Roselle* v. *Beach* (1942), 51 Cal.App.2d 579 [125 P.2d 77].) We think the instruction was not improper for the reason assigned. It is true that defendant King and his passenger Hankins testified circumstantially as to King's conduct until shortly before the accident. But both of them were rendered unconscious and neither was able to recall any of the events after their car was passed by a small pick-up truck shortly before the accident. They did not recall seeing the Larson car approaching nor what King's actions were immediately before the collision. It would have been better in instructing on the presumption, so far as the conduct of King was concerned, to limit it to the brief period which, due to their failure of recollection, was not covered by the testimony of King or his witness Hankins. But in view of the limitation which the instruction placed upon the presumption, and the undisputed evidence as to the manner in which King was driving, it is not reasonable to suppose that any prejudice resulted from failure of the court to so modify the instruction. We think the foregoing instruction also was sufficient to give plaintiffs the benefit of the presumption that Mr. Larson was not guilty of negligence. Plaintiffs requested an instruction which was more specific and which would have directed the jury to apply the presumption to the evidence that the Larson car came to rest upon the wrong side of the street. The instruction was objectionable in that it unduly emphasized the contention that decedent's car may have been on the left-hand side of the road ''by reason of some lawful operation on his part such as the making of a left-hand turn.'' This was a matter of argument and it was not error to refuse the instruction.

 A further claim of error is predicated upon the giving of the following instruction: ''If you find that the defendant, Thomas E. King, was operating his automobile in a careful and prudent manner he has the right to assume that the driver of any other vehicle on the road ahead of him would observe the law of the road and he is not guilty of negligence in acting upon such assumption unless he had knowledge to the contrary, or by use of reasonable diligence should have known to the contrary.'' The criticism is that there was no support in the evidence for a belief that defendant was operating his automobile in a careful and prudent manner. The argument is in accordance with our holding in

*King* v. *Long Beach, supra,* that King was not acting pursuant to an order of the military and that he was not legally justified in continuing to drive without lights. But inasmuch as plaintiffs did not ask the court to decide that point in their favor as one of law, and allowed it to be submitted to the jury, it was not error to give the instruction. The criticized portion is only one part of a rule which was properly stated under the circumstances. We have mentioned that there was evidence from which the jury could have concluded that Larson was driving upon the wrong side of the road when the cars came together. The rule stated in the instruction would have had application to such a situation, but it would have been error to instruct without the qualification that defendant could rely upon the assumption only if he were not himself driving negligently. Furthermore, under the theories upon which the case was tried, the jury were to determine whether defendant was driving negligently and it was proper to instruct upon his theories of defense.

In its instructions the court defined the terms "negligence" and "ordinary care" and also defined contributory negligence as "negligence on the part of the person injured which, cooperating in some degree with the negligence of another, helps in proximately causing the injury of which the former thereafter complains." Again, the jury were instructed that they must determine whether decedent was negligent and, if so, whether his negligence contributed in any degree as a proximate cause of the accident, and it was further stated that the burden was upon the defendant of proving that the plaintiff (decedent) was negligent and that such negligence contributed in some degree as a proximate cause of the injury, otherwise the decision of the issue of contributory negligence should be in plaintiffs' favor. Proximate cause was also defined. The court, at defendant's request, gave the following instruction:

"If you find from the evidence that the decedent immediately prior to, or at the time of, the happening of the accident involved in this case was guilty of any act or omission constituting contributory negligence as defined for you in these instructions: that is, of any act of negligence which proximately contributed to the happening of the accident, then, no matter how slight such contributory negligence may have been, it is imputable to the plaintiff herein and bars

his recovery; and in that event, the negligence of the defendant, if any such you find there was, becomes immaterial, for in such case your verdict must be for the defendant.''

Appellants criticize this instruction because, they say, ''it intimated to the jury that there were several degrees of contributory negligence.'' The instruction, considered by itself, was confusing. The rule in this sort of case is that if the proof shows that the failure of the plaintiff to use ordinary care, contributed proximately to the happening of the accident, the defense of contributory negligence is established. (*Rush* v. *Lagomarsino* (1925), 196 Cal. 308, 316 [237 P. 1066].) The instruction suggested the existence of ''slight contributory negligence,'' a term which would be self-contradictory. If the instruction had been understood by the jury to mean that if the decedent was slightly careless he was guilty of contributory negligence, the error would have been serious. But we think it reasonable to believe that the jury would place a construction upon it that would harmonize it with the other instructions rather than one which would render them completely contradictory, and that they would have understood that the court was speaking of negligence which might contribute slightly to the accident as a proximate cause, rather than to the failure to use a degree of care which did not measure up to ordinary care. Although the instruction was an unsuccessful attempt to state a correct principle, the ambiguity, in our opinion, was not such as to confuse the jury or cause it to lose sight of the true rule, which was stated correctly in numerous other instructions.

It is further contended that the court erred in refusing to allow plaintiffs to place in evidence a photograph of the decedent, and some argument is made that the verdict was without substantial support in the evidence. These assignments of error are not well taken. The latter does not call for particular discussion, in view of what has been said as to the sufficiency of the evidence to justify a finding of contributory negligence.

The judgment is affirmed.

Desmond, P. J., and Wood, J., concurred.

A petition for a rehearing was denied November 28, 1945, and appellants' petition for a hearing by the Supreme Court was denied December 20, 1945.