[Civ. No. 8865. First Appellate District, Division Two.—January 2, 1934.]

JOHN HILL, Respondent, v. EDWARD A. PERES, Appellant.

Colding, Hale, Crawford & Myers for Appellant.

Tinning & De Lap for Respondent.

OGDEN, J., *pro tem.*—This is an appeal from a judgment awarding damages for the death of Elizabeth Hill, the minor daughter of respondent, resulting from injuries received in an automobile accident. The cause was tried with a jury, which rendered its verdict in the sum of $7,833.

Shortly after 10 o'clock P. M. of the evening of January 24, 1932, respondent, driving a Ford coach, with his wife and their three minor children as passengers, was proceeding in an easterly direction along Cutting Boulevard in the city of Richmond. Cutting Boulevard, at the point where the accident occurred and for a considerable distance in either direction, is a level paved highway, sixty-one feet in width, bounded by fourteen-inch curbs. It runs in a general easterly and westerly direction, being perfectly straight except at a point approximately one thousand feet east of that of the accident, where it "jogs" slightly to the south and then continues in the same previous general direction, but deviating slightly to the north. The accident occurred, although within the city limits of Richmond, neither in a business nor residence district as defined in the California Vehicle Act.

The testimony of respondent and two of his children, the only survivors of the accident who were in the Hill car, indicates that respondent first observed the headlights of the automobile driven by appellant, an Auburn sedan in which he was riding alone, when it was at a distance equal to about three ordinary city blocks away approaching from the east on the same highway; that, although when first observed it was apparently on its right (the north) side of the road, as it approached it "zigzagged" across the highway to the

south side until directly in the path of respondent's car and between 150 and 200 feet away, when the latter turned sharply to his left in order to permit appellant to pass on his right. Unfortunately, at about the same instant, appellant also turned to his right with the result that the two cars came into violent collision on the north side of the highway, throwing respondent and his wife out of the car and inflicting upon their daughter Elizabeth the injuries from which she died the following day.

The tire-marks on the pavement show that just prior to the turn to the north by both automobiles they were headed directly toward each other, respondent's car being nineteen feet and appellant's car nineteen feet and two inches north of the south curb. They also indicate that the turn to the left made by respondent was quite abrupt, being only thirty-nine feet from the commencement of the turn to the point of impact, while that made by appellant was more gradual, being one hundred and ten feet in length. Respondent testified that he was driving at a speed of about thirty miles per hour immediately prior to turning to the left and appellant estimated his speed at about thirty to thirty-five miles per hour. However, the jury might reasonably have attributed a much higher rate of speed to appellant's car, not only from the length of the skid-marks made by it, but from the force of the impact, which turned the Hill car completely around so that it came to rest thirty-five to forty feet away, and facing in the opposite direction. It is admitted that it was a clear moonlight night, the pavement being perfectly dry and that both drivers were familiar with the highway.

■ Appellant suggests that the accident was unavoidable, thus preventing a recovery by either party. He fails, however, to point out why two drivers of motor vehicles approaching each other along such a broad straightaway are each unable to avoid a collision if both are exercising that degree of care and prudence which the law requires. Likewise his suggestion that his appearance of being on the wrong side of the highway was merely an optical illusion due to the "jog" in the highway is without merit in view of the evidence of his tire-marks, which undisputably shows him to have been there and the testimony of respondent, which indicates that it was after his car had passed the "jog" that appellant cut across to his left side of the road. That

immediately prior to the accident appellant was driving his car on his left side of the highway without any justification therefor in violation of section 122a of the California Vehicle Act cannot be seriously disputed.

Appellant does, however, earnestly contend that the proximate cause of the accident was not his act of driving on the wrong side of the road but was the act, which he contends was negligent, of respondent in turning to his left and attempting to pass appellant on the north side of the highway. He insists that respondent, having a space of highway nineteen feet to his right, was negligent as a matter of law in turning to his left instead of to his right, in which latter event, he insists, the accident would not have occurred. In support of his position he refers to the case of *Cupples Mercantile Co.* v. *Bow*, 32 Idaho, 774 [189 Pac. 48, 24 A. L. R. 1296], where it is held that the driver of an automobile is not justified under any circumstance in turning to the left to avoid an approaching vehicle, but must hold to his right side of the road at all hazards. Such view is not, however, in accord with the authorities of this state, nor, we think, with good reason. As expressed in the dissenting opinion in the same case: "It is not the law to say to one travelling on the right side of the highway that he must keep his course, even where it is impossible to turn to the right and permit a reckless, wilful or drunken driver, who has by his failure to obey the law in the first instance placed the former in a precarious position, to drive directly upon him to his certain injury and probable death."

This court, in *Hagenah* v. *Bidwell*, 46 Cal. App. 558 [189 Pac. 799], and again in *Anderson* v. *Dahl*, 121 Cal. App. 198 [8 Pac. (2d) 883], has adopted a view contrary to that expressed in the majority opinion in the Idaho case. In the former, under a state of facts similar to the present case, it was said: "It is argued that at the moment of collision the defendants were on their left-hand side of the road. This cannot be controverted, but it does not follow as a matter of law that the defendants were negligent in being where they were at that time. . . . there are certain circumstances under which the law permits one to use that portion of the highway. It is the duty of the driver of a vehicle who is suddenly confronted with danger, though arising from the fault of another, to seek to avoid

148

a collision. Whether he has taken the proper course depends upon all the circumstances of the case.''

It cannot be said as a matter of law that respondent was guilty of negligence merely by reason of the fact that he adopted a course contrary to the provisions of section 124a of the California Vehicle Act requiring drivers of vehicles approaching in opposite directions to pass each other to the right, nor merely because at the moment of collision his car was on his left side of the highway. Whether he was negligent in so doing or in being where he was at the time was a question for the jury to determine from all the circumstances of the occasion. Respondent was placed in a position of imminent danger by reason of the negligence of appellant. Appellant's car was rapidly approaching diagonally across his path. To his right he had a clearance of only nineteen feet bounded by a curb fourteen inches in height, with no assurance that the driver of the approaching car would not continue in that direction. In turning to his left respondent did what he testified was the best thing in his judgment to protect his family. That his choice of the hazards confronting him was compatible with the exercise of due care and that he acted as a man of ordinary prudence and caution would have acted under the same circumstances cannot be said as a matter of law to be without support in the evidence. By its verdict the jury has found that respondent was not guilty of negligence in this regard and its determination is conclusive here.

Nor can the amount of the verdict be said as a matter of law to be excessive. The medical and funeral expenses amounted to $333 leaving $7,500 awarded as general damages. Respondent was fifty-six years of age at the time of trial and his deceased daughter was ten years old at the time of her death. She had been a healthy, normal and affectionate child. In this class of cases the measure of damages is such as, under all the circumstances of the case, may be just (sec. 377, Code Civ. Proc.). There is no indication from the amount of the verdict that there was any abuse of good sense and sound discretion on the part of the jury in arriving at the difficult determination of the pecuniary value to respondent of the loss of the society, comfort and protection of his daughter. See *O'Meara* v. *Haiden*, 204 Cal. 354 [268 Pac. 334, 60 A. L. R. 1381], ap-

proving an award of $10,000 for the death of a son of the age of seven years.

Two other actions were separately brought against appellant arising out of the same accident, one by the administrator of the estate of respondent's wife for her death, and the other by respondent for his injuries. These actions were separately tried before a jury and in the latter case a verdict was rendered in favor of the defendant and appellant here, the jury appending to its verdict the words, "John Hill guilty of negligence." Appellant contends that, no appeal having been taken from the judgment entered thereon and it now having become final, it is *res judicata* as to the question of respondent's negligence. Without inquiring into what merit this contention might otherwise have, it is completely answered by the fact that the verdict and judgment in the companion case is subsequent in point of time to the verdict and entry of judgment here. The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 1, 1934.