[Civ. No. 2934.    Fourth Dist.    Sept. 23, 1942.]

WARREN S. EBERT et al., Respondents, v. TIDE WATER ASSOCIATED OIL COMPANY (a Corporation) et al., Appellants.

498

Ray H. Overacker and Head, Wellington & Jacobs for Appellants.

Drumm, Tucker & Drumm for Respondents.

GRIFFIN, J.—Sitting without a jury, the trial court rendered a judgment against appellants as the result of an automobile accident in Huntington Beach. Olive Street, in that city, is a public highway running in an easterly and westerly direction. Second Street runs in a northerly and southerly direction. Each street is 40 feet wide. This is a blind intersection to cars traveling southerly on Second Street and to cars traveling westerly on Olive Street, by reason of the obstructed view on the northeast corner due to a house and palm tree located thereon. At about 4:30 p. m. on May 24, 1940, respondents were riding in a bantam Austin station wagon driven by respondent Warren S. Ebert. It was

proceeding westerly on Olive Street at an approximate speed of 15 to 20 miles per hour. Appellant Beaudreaux, employee of appellant Tide Water Associated Oil Company, a corporation, was driving a Sterling truck in a southerly direction on Second Street at a speed estimated by respondents at from 25 to 30 miles per hour. Appellants' truck was 21 feet long.

The testimony of witnesses for respondents was that respondents' car had reached the imaginary easterly curb line of Second Street when he (Ebert) saw appellants' truck approaching in a southerly direction approximately 35 feet north of the northerly curb line of the intersection; that he (Ebert) continued across Second Street at 15 to 20 miles per hour and that the truck collided with the Ebert car in the southwest corner of the intersection after it had traversed nearly the entire intersection.

The evidence shows that the collision occurred about two feet east of the prolonged westerly curb line of Second Street and in the southwest corner of the intersection. In this respect the trial judge made the following statement in his oral decision:

". . . where the collision occurred was at a point where Mr. Ebert was pretty well through the intersection. Of course, they were traveling at approximately the same rate of speed I think where the collision occurred, and there isn't any question but what the truck hit the station wagon. I think from that and the fact that they were both going at pretty much the same rate of speed that we have the broad inference that that would be the car (Eberts') that would be entering the intersection first, and this being an ordinary highway and not a through highway, the Code provides that the vehicle entering the intersection first has the right-of-way. So I think that the plaintiff entered the intersection first and had the right-of-way."

Appellants on this appeal raise two contentions: (1) That there is no evidence to sustain the court's finding of negligence on the part of the appellants, which negligence was the sole proximate cause of the accident. (2) That respondents are guilty of contributory negligence as a matter of law.

As to the first contention it is argued that the evidence does not justify the court's conclusion that appellants' truck ran into the side of respondents' car and that respondents' car was first in the intersection. The testimony of

Beaudreaux, of course, would not authorize such a conclusion, but we, on appeal, must consider the evidence supporting the judgment and all conflicts in the evidence must be resolved on appeal in support of the judgment and findings of the trial court, and where there is substantial evidence directly or indirectly tending to support the findings the judgment will not be disturbed. (*Miller* v. *Pacific Freight Lines*, 40 Cal. App. (2d) 451 [104 P. (2d) 1069].) Upon examination, in the light of this rule, the evidence supports the trial court's conclusion.

The testimony of both Mr. and Mrs. Ebert in this respect is alone sufficient. It reads in part: "Q. Mr. Ebert, what portion of your car was damaged? A. The rear end. Q. Was anything damaged on the front end? A. Nothing but the headlight, the lamp was broken. The windshield, hood and front fenders were all intact. Q. Was the right front fender damaged? A. No." Mrs. Ebert in this regard testified: "Q. Could you judge how fast the truck was coming? A. No, I couldn't. That didn't enter my mind. I knew the truck was coming, but it wasn't so close that I was frightened. I wasn't a bit frightened until I realized he wasn't slackening speed. He didn't seem to be coming fast, and I tensed and I listened for the squeak of the tires. I looked down this way (indicating) and saw his bumper coming right at our rear corner, here (indicating). Q. And his (appellant's) front bumper hit your right rear corner, is that correct? A. Yes, I was looking down this way (indicating). He was coming right at this rear corner here (indicating). That is why this side of my face got it."

In addition to their testimony the evidence shows that the front bumper of the truck was painted red. The foreman of the garage who repaired the Bantam station wagon testified: "Q. And were there any marks on the right side of the (Bantam) car that may have been from the collision? . . . A. There were red paint marks on the right-hand side of the station wagon from just in front of the center back across the right rear fender. Q. And those marks ran in which direction? A. They were horizontal."

There was other testimony which the trial court could have taken into consideration in finding that the respondents entered the intersection first, and also in finding that the appellant Beaudreaux drove his truck negligently into the intersection. The evidence is clear that Beaudreaux did not apply his brakes until he was well into the intersection.

The skid marks indicate that the application of brakes began at the intersection and these skid marks were made with the rear wheels of the 20-foot truck. This being the case, the front of the truck was in the center of the intersection before the brakes were applied. The attention of Mr. Beaudreaux may have been distracted shortly before or just at the time of the collision, as indicated by his testimony on cross-examination. In referring to his actions before approaching the intersection here involved, he testified in answer to the question, ''When did you begin to slow down? A. Well, this block here is all in the clear. When I turned this corner and went into it up here, I remember there were two little children playing here with a dog and the dog had a ball in its mouth, and as I came up into the center of the street they were running this way, and I took my foot off the throttle and had my foot on the brake, watching the children right over here (indicating). That I remember, and when I looked back the dog was across the street here (indicating), and the children were playing there, and so I proceeded across the intersection.''

The established rule of law here applicable is that where one car has actually entered an intersection before another car approaches it, the driver of the first car has the right to assume that he will be given the right of way and be permitted to pass through the intersection without the danger of collision. He has the right to assume that the driver of the other car will obey the law, slow down, and yield the right of way, if slowing down be necessary to prevent a collision. (*Page* v. *Mazzei*, 213 Cal. 644 [3 P. (2d) 11].) Whether or not the respondent driver of the station wagon, after observing the approach of the truck, its position, the rate of speed it was traveling and keeping the same within his side vision, was justified in proceeding upon his rightful way across the intersection in advance of the truck, presented a question of fact upon which reasonable minds might differ and not one of law. (*Page* v. *Mazzei, supra; Couchman* v. *Snelling,* 111 Cal. App. 192 [295 Pac. 845].)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.