[L. A. No. 19502. In Bank. Jan. 31, 1947.]

G. E. SATTERLEE, Respondent, v. ORANGE GLENN SCHOOL DISTRICT OF SAN DIEGO COUNTY et al., Appellants.

Tripp, Callaway, Sampson & Dryden, Lowell L. Dryden and DeWitt W. Manning for Appellants.

William M. Hawkes, Monroe & McInnis and C. M. Monroe for Respondent.

EDMONDS, J.—G. E. Satterlee sued to recover damages for the death of his wife, and also for injury to his person and property resulting from an automobile collision. The principal points relied upon as grounds for a reversal of the judgment in his favor concern two jury instructions stating the legal effect of violation of the Vehicle Code in fixing liability for the accident.

At the time the accident occurred, Satterlee, accompanied by his wife, was driving an automobile in a northerly direction on Citrus Drive. A bus of the school district, operated by Paul Osteraas, was traveling west on Bear Valley Road toward its intersection with Citrus Drive. From a point about 60 feet south of Bear Valley Road, for several hundred feet to the south, Citrus Drive had a six per cent ascending grade.

Bear Valley Road was about level on both sides of Citrus Drive and the streets intersected at approximately a 90 degree angle. Neither of these roads was a through highway, although Citrus Drive carried considerably more traffic than the east and west street. The hard surfaced portion of Bear Valley Road, together with its shoulders, was approximately 29 feet wide; that of Citrus Drive was 32 feet.

As the two drivers approached the corner at about 8 o'clock in the morning, both of them had a clear and unobstructed view of the intersecting road for about 600 feet in each direction. The weather was overcast with a drizzling mist, but this did not affect visibility. Their testimony was in direct conflict as to who first entered the intersection, the relative speeds at which the vehicles were traveling, and the distance of the vehicles from the intersection when each operator first observed the other.

Satterlee declared that he was driving at a speed of about 25 miles per hour, and when he was some 75 to 100 feet south of the intersection he first saw the school bus approaching from his right. The bus then appeared to be about twice as far from the intersection. Satterlee continued on at the "same rate of speed." He said that he thought he had "worlds of time," that he did not see the bus again until just before the impact, and that he believed he was in the intersection first "because I was so far across."

Osteraas estimated that prior to reaching Citrus Drive, the speed of the bus was between 30 and 35 miles per hour when, at a point about 195 feet east of the intersection, he looked to his left and saw the Satterlee automobile. It was then some 300 feet south of the intersection traveling north at a speed of between 35 and 45 miles per hour. He realized that if neither vehicle slackened its speed the two would reach the intersection at approximately the same time, but he expected Satterlee to slow down. He did not see the automobile again until it was too late to avoid the collision. However, he was positive that the bus entered the intersection first, traveling at a speed of 20 to 25 miles per hour.

The testimony of four disinterested witnesses casts considerable doubt upon the bus driver's account of the accident. They quoted Osteraas as saying that he did not see the Satterlee vehicle until just before the collision; also, that he did not know how the accident happened as the first thing he knew, the car was in front of him and he did not have time

to stop. According to the evidence, these statements, and other remarks by Osteraas of like import, were made within an hour after the accident.

The point of impact, as estimated by the investigating officer, was approximately one and one-half feet north of the center line of Bear Valley Road and five feet east of the center line of Citrus Drive. Brake marks left by the school bus led up to the point of impact. The marks on the road indicated that the bus had swerved to the right "after the point of impact." The left front corner of the bus struck the right side of the automobile either over the right front wheel or opposite the right front door.

An instruction requested by the appellants and refused by the trial court reads as follows:

"You are instructed under Section 550 of the Vehicle Code, which is the law of the State of California, provides as follows:

"*Vehicle Approaching or Entering Intersection.*

"(a)   The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway.

"(b)   When two vehicles enter an intersection from different highways at the same time the driver of the vehicle on the left shall yield the right of way to the driver of the vehicle on the right.

"(c)   This section shall not apply to vehicles approaching each other from opposite directions, when the driver of one of such vehicles is intending to or is making a left turn. Such movements shall be governed by Section 551.

"I therefore instruct you that if you find under the evidence that the school bus operated by Paul Osteraas entered the intersection before the vehicle operated by the plaintiff, then I instruct you that it was the duty of the plaintiff to yield the right of way to the school bus, and a failure so to do would constitute negligence on the part of G. E. Satterlee.

"In accordance with the provisions of this section just read to you, I further instruct you that if you find under the evidence that the school bus and the Satterlee vehicle entered the intersection from different highways at the same time, and if you further find that the school bus was to the right of the Satterlee automobile, then I instruct you that it was the duty of the plaintiff to yield the right of way to the school bus and a failure so to do would constitute negligence.

"You are therefore instructed that if you find under the evidence that the plaintiff violated the provisions of the Vehicle Code, such violation is negligence, and if you further find that such negligence if any proximately contributed in the slightest degree to the subsequent accident and injury, then your verdict must be in favor of the defendant, Orange Glen School District of San Diego County and against the plaintiff G. E. Satterlee."

Upon his own motion the trial judge instructed the jury:

"Now, with reference to this matter of right of way, I wish to tell you members of the jury that one may have the right of way and yet be negligent. One cannot rely on the right of way arbitrarily and force anyone else off the highway. He cannot barge in and claim the right of way over one whose approach may be a menace to his safety or to the driver of that automobile's safety. The same test which I have given you originally applies in cases on intersections of highways, regardless of who was in the intersection first, and regardless of which automobile is on the right, if they approached at the same time; that is, what would a reasonably prudent person have done under the same or similar circumstances. That applies to both the drivers colliding, whether they approach the intersection at the same time, enter it at the same time, or one entered the intersection first. In other words, these rules of law are not absolute. They must be considered in connection with what would a reasonably prudent person have done under the same or similar circumstances . . .

"I have told you substantially of the rules of law and gave you what is called the basic speed law. I told you that when two automobiles enter an intersection at the same time the automobile or motor vehicle, whether bus or lighter vehicle, on the right, has the right of way, and if one motor vehicle enters an intersection before the other, that motor vehicle has the right of way, but that the right of way is not an absolute right to barge through ignoring any danger to the other motorist or to the barging motorist. One cannot arbitrarily rely on the right of way and expect to scatter from his path all of those who have lesser rights. In other words, the same general rule applies, and the test is: What would a reasonably prudent person do under the same or similar circumstances? It is possible for one who has the right of way to be negligent in the operation of that unquestioned right, under a certain set of circumstances."

The appellants contend that in view of their defense of contributory negligence based upon an asserted violation of section 550 of the Vehicle Code, they were entitled to an unequivocal instruction in the form requested by them. The facts of this case, they insist, do not bring it within the rule that circumstances beyond a plaintiff's control may excuse violation of the statute. The court's instruction to the effect that violation of the statute was of no consequence if the plaintiff acted as a reasonably prudent person would act under similar circumstances is also challenged as erroneous. The evidence was evenly balanced upon the issues of negligence and contributory negligence, say the appellants, and as it would support a finding that the bus entered the intersection first, the failure to correctly instruct the jury as to all of the material issues constituted reversible error.

The position of the respondent is that the proposed instruction gives no regard to the circumstances surrounding the accident, such as the speed at which the two vehicles approached the intersection, the attention given by each driver to other traffic, and the respective manner in which the automobile and the bus were operated. Also, the requested instruction does not include as a basis for the jury's consideration circumstances which might properly be considered as excusing violation of the statute. In conclusion, says the respondent, the instructions given fully and adequately covered the law applicable to the case.

The standard of care to which ordinarily one must conform is usually that of the ordinarily prudent or reasonable person under like circumstances. (Civ. Code, § 1714; *James* v. *Frazee,* 209 Cal. 456 [288 P. 784]; *Kelley* v. *Hodge Transp. System,* 197 Cal. 598 [242 P. 76]; *Scott* v. *San Bernardino Valley etc. Co.,* 152 Cal. 604 [93 P. 677]; *Franklin* v. *Southern Cal. Motor Road Co.,* 85 Cal. 63 [24 P. 723]; *Richardson* v. *Kier,* 34 Cal. 63 [91 Am.Dec. 681]; *Fuch* v. *Werner,* 99 Cal.App. 557 [279 P. 183]; *Chalmers* v. *Hawkins,* 78 Cal. App. 733 [248 P. 727]; Rest., Torts, § 283.) But the proper conduct of a reasonable person under particular situations may become settled by judicial decision or be prescribed by statute or ordinance.

Traffic rules are statutory standards; for example, a parking requirement (*Thomson* v. *Bayless,* 24 Cal.2d 543 [150 P. 2d 413].); direction of traffic on the street (*Harris* v. *John-*

*son,* 174 Cal. 55 [161 P. 1155, Ann.Cas. 1918E 560, L.R.A. 1917C 477]); limitation upon speed (*Benjamin* v. *Noonan,* 207 Cal. 279 [277 P. 1045]); *Schilling* v. *Central Cal. Traction Co.,* 115 Cal.App. 30 [1 P.2d 53]); but section 513 of the Vehicle Code now makes it necessary to establish as a fact that the operation of a vehicle at a greater than prescribed speed constitutes negligence. ▇ An act or failure to act below the statutory standard is negligence *per se,* or negligence as a matter of law. ▇ And if the evidence establishes that the plaintiff's or defendant's violation of the statute or ordinance proximately caused the injury and no excuse or justification for violation is shown by the evidence, responsibility may be fixed upon the violator without other proof of failure to exercise due care. (*Thomson* v. *Bayless, supra; Wright* v. *Los Angeles Ry. Corp.,* 14 Cal.2d 168 [93 P.2d 135]; *Stein* v. *United Railroads,* 159 Cal. 368 [113 P. 663]; *Cragg* v. *Los Angeles Trust Co.,* 154 Cal. 663 [98 P. 1063, 16 Ann.Cas. 1061]; *McKune* v. *Santa Clara V. M. & L. Co.,* 110 Cal. 480 [42 P. 980]; *Siemers* v. *Eisen,* 54 Cal. 418; *Muir* v. *Cheney Bros.,* 64 Cal.App.2d 55 [148 P.2d 138]; *Samuelson* v. *Siefer,* 62 Cal.App.2d 320 [144 P.2d 879]; *Ferguson* v. *Nakahara,* 43 Cal.App.2d 435 [110 P.2d 1091]; *Alechoff* v. *Los Angeles G. & E. Corp.,* 84 Cal.App. 33 [257 P. 569]; *Connell* v. *Harris,* 23 Cal.App. 537 [138 P. 944]; see: Rest., Torts, §§ 285, 286, 288.)

▇ However, in an emergency, or under unusual conditions, it is generally held that circumstances may be shown to excuse the violation. The rule has been aptly stated in *Jolley* v. *Clemens,* 28 Cal.App.2d 55, 67 [82 P.2d 51], where it was said (quoting from 1 Shearman & Redfield on Negligence, § 13): " '. . . violation of such a statute or ordinance is presumptive evidence of negligence, which, if not excused by other evidence, including all the surrounding circumstances, should be deemed conclusive . . .' " Continuing, the court said: "But unless and until justification or excuse for such conduct appear . . . the general rule applies and it must be treated as negligence *per se.*" To the same effect is *Gallichotte* v. *California Mut. etc. Assn.,* 4 Cal.App.2d 503, 505 [41 P.2d 349], where it was stated: "Violation of an ordinance is negligence *per se.* In *Alechoff* v. *Los Angeles Gas & Electric Corp.,* 84 Cal.App. 33, 39 [257 P. 569], it is said: 'It is an axiomatic truth, that every person while violating an express statute, is a wrongdoer, and as such is *ex necessitate*

negligent in the eye of the law.' An act which is performed in violation of an ordinance or statute is presumptively an act of negligence, but the presumption is not conclusive and may be rebutted by showing that the act was justifiable or excusable under the circumstances. Until so rebutted it is conclusive. (*Mora* v. *Favilla*, 186 Cal. 199, 202 [199 P. 17]; *Rath* v. *Bankston*, 101 Cal.App. 274, 281 [281 P. 1081].)'' However, the fact which will excuse the violation of a statute has been defined ,by the court as one resulting ''from causes or things beyond the control of the person charged with the violation.'' (4 Cal.App.2d at p. 506. See also: *Thomson* v. *Bayless, supra; Mathers* v. *County of Riverside*, 22 Cal.2d 781 [141 P.2d 419]; *Fennessey* v. *Pacific Gas & Elec. Co.*, 20 Cal.2d 141 [124 P.2d 51]; *Johnson* v. *Griffith*, 19 Cal.2d 176 [120 P.2d 6]; *Berkovitz* v. *American River Gravel Co.*, 191 Cal. 195 [215 P. 675]; *Squier* v. *Davis Std. Bread Co.*, 181 Cal. 533 [185 P. 391]; *Cragg* v. *Los Angeles Trust Co., supra; Shelby* v. *Southern Pac. Co.*, 68 Cal.App.2d 594 [157 P.2d 442]; *Roberts* v. *Salmon*, 66 Cal.App.2d 22 [151 P.2d 556]; *Fietz* v. *Hubbard*, 59 Cal.App.2d 124 [138 P.2d 315]; *Prescott* v. *City of Orange*, 56 Cal.App.2d 144 [132 P.2d 523]; *Finney* v. *Wierman*, 52 Cal.App.2d 282 [126 P.2d 143]; *Henslee* v. *Fox*, 25 Cal.App.2d 286 [77 P.2d 307]; *Scalf* v. *Eicher*, 11 Cal.App.2d 44 [53 P.2d 368]; *Hill* v. *Peres*, 136 Cal.App. 144 [28 P.2d 944]; *Freitas* v. *Passerino*, 131 Cal. App. 585 [21 P.2d 993]; *Giorgetti* v. *Wollaston*, 83 Cal.App. 358 [257 P. 109].)

Thus in *Rath* v. *Bankston, supra,* where an automobile was parked partly on the highway in violation of the statute, the defendant was allowed to show that, despite reasonably careful inspection, the gasoline supply became exhausted and the car stalled. In another case where a collision occurred with a car which had no taillight, evidence that the light was inspected and found in good order a short time before was held admissible to negative the presumption of negligence. (*Berkovitz* v. *American Gravel Co., supra.*) And in *Mathers* v. *County of Riverside, supra,* this court reversed a judgment which followed an instruction to the jury that if the plaintiff violated section 525 of the Vehicle Code which requires driving as close as practicable to the right side edge of the road, she was negligent as a matter of law. ''Under all of the circumstances of the case,'' said the court, ''it should have been left to the jury whether or not the position of her car

with reference to the white line constituted contributory negligence.'' (P. 786.)

A different conclusion was reached where defendant stopped on the roadway side of a parked car to permit his wife to alight. The car behind, in which plaintiff was. riding, collided with defendant's vehicle. Defendant's excuse for violation of the prohibition against double parking (Veh. Code § 586) was not accepted, the court holding that the positive mandate of the statute could not be set aside for personal convenience. (*Mason* v. *Crawford*, 17 Cal.App.2d 529 [62 P.2d.420].)

In the application of this rule each violation of a statutory requirement must be considered in connection with the surrounding circumstances. Ordinarily, the excuse relied upon by the violator presents a question of fact for the jury's determination. As stated in *Scalf* v. *Eicher, supra,* p. 54: ''Whether or not a violation of a statute or ordinance proximately contributed to an accident and whether the violation was excusable or justifiable are questions of fact except in a case where '. . . the court is impelled to say that from the facts reasonable men can draw but one inference and that an inference pointing unerringly to the negligence of the plaintiff contributing to his injury.' '' (See also: *Mathers* v. *County of Riverside, supra; Johnson* v. *Griffith, supra; Arellano* v. *City of Burbank,* 13 Cal.2d 248 [89 P.2d 113] ; *Berkovitz* v. *American River Gravel Co., supra; Prescott* v. *City of Orange, supra; Ebert* v. *Tide Water Assoc. Oil Co.,* 54 Cal. App.2d 497 [129 P.2d 135] ; *Wright* v. *Ponitz,* 44 Cal.App.2d 215 [112 P.2d 25] ; *Mecchi* v. *Lyon Van & Storage Co.,* 38 Cal.App.2d 674 [102 P.2d 422] ; *Osgood* v. *City of San Diego,* 17 Cal.App. 2d 345 [62 P.2d 195].)

But there is, of course, a further question in connection with the issue of negligence. Although a violation of a statute is not excusable under the particular circumstances of the case, liability is also dependent upon proof that a duty was owed to persons in the class of the plaintiff or the defendant who is relying upon contributory negligence. (*Bateman* v. *Doughnut Corp. of America,* 63 Cal.App.2d 711 [147 P.2d 404] ; *Figone* v. *Guisti,* 43 Cal.App. 606 [185 P. 694] ; *Corbett* v. *Spanos,* 37 Cal.App. 200 [173 P. 769] ; see: *Flynn* v. *Bledsoe Co.,* 92 Cal.App. 145 [267 P. 887] ; Rest., Torts, § 286.)

It is also necessary to show that the violation was a proximately contributing cause of the injury. (*Burtt* v.

*Bank of California,* 211 Cal. 548 [296 P. 68]; *Williams* v. *Southern Pac. Co.,* 173 Cal. 525 [160 P. 660]; *Hitson* v. *Dwyer,* 61 Cal.App.2d 803 [143 P.2d 952]; *Sharick* v. *Galloway,* 19 Cal.App.2d 693 [66 P.2d 185].)

■ In the present case the requested instruction advised the jury that if the school bus entered the intersection before the vehicle operated by Satterlee, his failure to yield the right of way constituted negligence; if the two vehicles entered the intersection at the same time, and the school bus was to the right of the Satterlee vehicle, his failure to yield the right of way constituted negligence; and if Satterlee's violation of these Vehicle Code sections proximately contributed in the slightest degree to the happening of the accident, the verdict must be in favor of the school district and its driver. But an operator of a motor vehicle cannot arbitrarily rely upon the right of way gained as a result of excessive speed or by other negligent act or violation of the law. (*Lindenbaum* v. *Barbour,* 213 Cal. 277 [2 P.2d 161]; *Stevenson* v. *Fleming,* 47 Cal.App.2d 225 [117 P.2d 717]; *Miller* v. *Cranston,* 41 Cal.App.2d 470 [106 P.2d 963]; *Groat* v. *Walkup Drayage etc. Co.,* 14 Cal.App.2d 350 [58 P.2d 200]; see: *Page* v. *Mazzei,* 213 Cal. 644 [3 P.2d 11]; *Casselman* v. *Hartford A. & I. Co.,* 36 Cal.App.2d 700 [98 P.2d 539]; *Pattisson* v. *Cavanagh,* 18 Cal.App.2d 123 [63 P.2d 868, 64 P.2d 945]; 136 A.L.R. 1497 supplementing annotation in 89 A.L.R. 838.) ■ And although the instruction correctly left the question of fact of violation to the jury, it invaded the province of the trier of fact by not tendering for consideration the issue as to whether the circumstances were such as to excuse violation. From the evidence, the jury reasonably might have found that the bus increased its speed while traveling the 200 feet immediately east of the point of impact. If, as stated by Satterlee, when he observed the bus it was about twice as far from the intersection and traveling at approximately the same speed as his own vehicle, then he reasonably was justified, the jury could have concluded, in assuming that the bus would not dangerously increase its speed in order to enter the intersection first. Certainly by his own act of increasing speed or "racing for the intersection" an automobile driver should not be allowed to charge the operator of the other vehicle in the collision with negligence *per se* without the right to prove justification for the statutory violation.

Furthermore, the testimony of disinterested witnesses shows that the bus driver, having unimpaired visibility, did not observe the automobile until almost the instant of impact. Under these circumstances it was a question of fact whether Satterlee's violation of the code provisions, if any, was justifiable or excusable. And although judicial discretion may be exercised in the adoption of a standard of care for the purpose of imposing civil liability, the refused instruction did not afford the jury an opportunity to pass upon the question as to whether the circumstances shown by the evidence afforded excuse or justification. For these reasons, to have instructed the jury in the terms proposed by the appellants would have constituted prejudicial error. (See *Mathers* v. *County of Riverside, supra; Fietz* v. *Hubbard, supra; Finney* v. *Wierman, supra; Marston* v. *Pickwick Stages, Inc.,* 78 Cal.App. 526 [248 P. 930] ; *Hagenah* v. *Bidwell,* 46 Cal.App. 556 [189 P. 799].)

The instruction given by the trial judge upon his own motion presents a more difficult question. He refused to adopt the standard of care established by the Legislature and did not instruct the jury that violation of the statutory standard constituted prima facie evidence of negligence which could be rebutted by evidence of justification or excuse. Instead, upon the issue of contributory negligence, the court adopted the reasonable man standard of care exclusively, and allowed the jury to determine what constituted due care under the circumstances. The question presented for decision upon this aspect of the case is, therefore, whether the trial court arrived at a proper standard.

By the instruction which adopted the reasonable man standard of care, the jury, in effect, was told that the school district and its driver had the burden of establishing the failure of Satterlee to act as a reasonable man under the circumstances although he had violated a statute and such violation proximately caused the accident. That is not the law. The presumption created by proof of the failure to comply with a statute or ordinance relieves a defendant from the burden of proving that the plaintiff failed to act as a reasonably prudent man. All that the defendant need prove to establish contributory negligence is that plaintiff's violation of the statute in question proximately caused the accident. Therefore the burden cast upon the defendant where such violation is relied upon, is more easily established than a failure to act as would a reasonably prudent man under similar circum-

stances. If there was a violation of the applicable statute, the burden of going forward is then cast upon the plaintiff, if the defendant is relying upon contributory negligence, to present evidence justifying an excuse for violation. If the jury does not believe that the evidence is sufficient to excuse violation, it must find for the defendant.

For these reasons the adoption by the trial court of the standard of care imposed by a statute or ordinance becomes an important factor in imposing liability. The instruction given by the court on its own motion had the effect of minimizing, if not completely negativing, the code provision. It was, therefore, erroneous and considering the direct conflict in the evidence, constituted "a miscarriage of justice" within the meaning of article VI, section 4½ of the California Constitution.

The judgment is reversed.

Gibson, C. J., Shenk, J., Schauer, J., and Spence, J., concurred.

TRAYNOR, J.—I concur in the judgment. I cannot agree, however, with the doctrine set forth in the majority opinion that an act or a failure to act in violation of a statute like the Vehicle Code is merely "presumptive evidence of negligence," which may be rebutted by showing that the act or omission was justifiable or excusable under the circumstances, with the excuse or justification a question of fact for the jury. This doctrine is in effect a modified form of the doctrine that the violation of a statute (herein used to include an ordinance) is merely evidence of negligence. Under the ordinary evidence-of-negligence doctrine the jury, while obliged to consider the statutory standard, is free to substitute a standard of its own. Under the majority opinion it is likewise free to do so, if the one violating the statute offers evidence of excuse or justification. Since it is a question of fact for the jury whether the excuse or justification is sufficient, the result is that one violating the statute need only offer proof that he acted as a reasonably prudent person under the circumstances, and the jury is then free to conclude therefrom that he was justified in violating the statute unless "reasonable men can draw but one inference . . . pointing unerringly to . . . negligence."

The statement is frequently found in the cases that an act in violation of a statute "is presumptively an act of negligence

and while the defendant is permitted to rebut such presumption by showing that the act was justifiable or excusable under the circumstances, until so rebutted it is conclusive." (*Mora* v. *Favilla,* 186 Cal. 199, 202 [199 P. 17] ; see, also, *Berkovitz* v. *American River Gravel Co.,* 191 Cal. 195, 199 [215 P. 675] ; *Dewhirst* v. *Leopold,* 194 Cal. 424, 431 [229 P. 30] ; *Harris* v. *Johnson,* 174 Cal. 55, 58 [161 P. 1155, Ann.Cas. 1918E 560, L.R.A. 1917C 477] ; *Rath* v. *Bankston,* 101 Cal.App. 274, 281 [281 P. 1081].) The vice of such a statement is that it leaves to the jury the determination of the effect of a statute, a question of law that properly belongs to the court. Presumptions are used in ascertaining what the facts are, not in determining what the law is. (See, Wigmore, Evidence, 3d ed. § 2490.) If the "presumption" can be rebutted merely by showing that one charged with violating the statute acted as a reasonably prudent person under the circumstances, 'the controlling standard is no longer the statutory rule, but the view of the jury as to what constitutes reasonable conduct.

The vital question, presented at the outset, is whether the statutory standard is applicable at all. If it is, the conduct of the parties must be measured by that standard, and the jury is not free to determine what a reasonably prudent person would have done under the circumstances. If there is sufficient excuse or justification, there is ordinarily no violation of a statute, and the statutory standard is inapplicable. If a statute is so drawn as not to be susceptible of such a construction, so that it would impose liability without fault, the statutory standard is ordinarily not an appropriate one in a negligence case and should be rejected by the court. (*Clinkscales* v. *Carver,* 22 Cal.2d 72, 75 [136 P.2d 777] ; see Morris, Criminal Statutes and Tort Liability, 46 Harv.L.Rev. 453, 457.) It is needlessly circuitous and confusing, and productive of caprice and conflict in decisions, to instruct the jury that they should first determine whether the conduct in question fell below the statutory standard and that they should then determine whether such conduct was justifiable under the circumstances. It is a question of law in each case whether the acts were in violation of the statute, or excepted therefrom, or if not excepted, whether liability without fault would be imposed by adopting the statutory standard. It is of course a question of fact whether the alleged acts occurred.

A majority of American courts have adopted the doctrine that the violation of a statute constitutes negligence *per se*

towards persons harmed as a result of acts or omissions constituting such violation, if the statute was designed to protect such persons against that kind of harm, even though the statute provides criminal sanctions only and makes no reference to civil liability. (See, James, Accident Liability, 55 Yale L.J. 365, 367; Prosser, Torts, § 39; Thayer, Public Wrong and Private Action, 27 Harv.L.Rev. 317; Restatement, Torts, § 286.) The courts of this state have frequently followed this doctrine. (*Siemers* v. *Eisen,* 54 Cal. 418, 420; *Driscoll* v. *Market Street etc. Ry. Co.,* 97 Cal. 553, 565 [32 P. 591, 33 Am.St.Rep. 203]; *McKune* v. *Santa Clara V. M. & L. Co.,* 110 Cal. 480, 486 [42 P. 980]; *Benjamin* v. *Noonan,* 207 Cal. 279, 283 [277 P. 1045]; *Cragg* v. *Los Angeles Trust Co.,* 154 Cal. 663 [98 P. 1063, 16 Ann.Cas. 1061]; *Baillargeon* v. *Myers,* 180 Cal. 504, 507 [182 P. 37]; *Clinkscales* v. *Carver,* 22 Cal.2d 72, 75 [136 P.2d 777]; *Hopper* v. *Bulaich,* 27 Cal.2d 431, 434 [164 P.2d 483]; *King* v. *City of Long Beach,* 67 Cal.App.2d 1, 6 [153 P.2d 445]; *Alechoff* v. *Los Angeles G. & E. Corp.,* 84 Cal.App. 33, 39 [257 P. 569].)

It is clear that the legislative standard is controlling if the statute expressly provides for civil liability. Confusion has arisen in the past from a failure to understand why the legislative standard governs civil liability when the statute prescribes criminal sanctions only. The reason is simply that the courts under common law principles make the legislative standard controlling and take the formulation of a standard from the jury, when they find that the criminal statute has been enacted not merely in the interest of the community as a whole but to protect a general class of persons, of which the party invoking the statute is a member, against the kind of harm that has been sustained. The decision as to what should be the controlling standard is made by the court, whether it instructs the jury to determine what would have been due care of a man of ordinary prudence under the circumstances or to follow the standard formulated by a statute. The latter standard determines civil liability, not because the Legislature has so provided, but because the courts recognize that, with respect to the conduct in question, the duties of the parties are determined by the statute. (The legislative standard may be controlling even in situations in which there is technically no crime. (*Clinkscales* v. *Carver,* 22 Cal.2d 72, 75 [136 P.2d 777]; see, also, *Polk* v. *City of Los Angeles,* 26 Cal.2d 519,

541-542 [159 P.2d 931].) If the forbidden conduct were merely evidence of negligence, the jury would be free to substitute its own standard of reasonable conduct, and to approve conduct that the Legislature has declared so dangerous as to call for criminal punishment. ''Negligence is failure to exercise the care required by law. Where a statute defines the standard of care and the safeguards required to meet a recognized danger, then as we have said, no other measure may be applied in determining whether a person has carried out the duty of care imposed by law. Failure to observe the standard imposed by statute is negligence, as a matter of law.'' (Lehman, J. in *Tedla* v. *Ellman,* 280 N.Y. 124 [19 N.E.2d 987, 990].) ''By the very terms of the hypothesis, to omit, wilfully or heedlessly, the safeguards prescribed by law for the benefit of another that he may be preserved in life or limb, is to fall short of the standard of diligence to which those who live in organized society are under a duty to conform. . . . Jurors have no dispensing power, by which they may relax the duty that one traveler on the highway owes under the statute to another. It is error to tell them that they have.'' (Cardozo, J. in *Martin* v. *Herzog,* 228 N.Y. 164 [126 N.E. 814, 815].)

Some statutes, such as traffic laws, are enacted, not to prevent acts that the community may regard as inherently undesirable, but to prescribe uniform and certain rules of conduct in the interest of safety. Such rules are authoritative declarations as to how persons shall act, and must be observed because regulations of some kind are essential. ''Vehicular traffic can proceed safely and without recurrent traffic tangles only if vehicles observe accepted rules of the road. Such rules, and especially the rule that all vehicles proceeding in one direction must keep to a designated part or side of the road— in this country the right hand side—have been dictated by necessity and formulated by custom. The general use of automobiles has increased in unprecedented degree the number and speed of vehicles. Control of traffic becomes an increasingly difficult problem. Rules of the road, regulating the rights and duties of those who use the highways, have, in consequence, become increasingly important. The Legislature no longer leaves to custom the formulation of such rules. Statutes now codify, define, supplement, and, where changing conditions suggest change in rule, even change rules which formerly rested on custom.'' (Lehman, J., in *Tedla* v. *Ellman,* 280 N.Y.

124 [19 N.E.2d 987,989].) In such a field, "when the Legislature has spoken, the standard of care required is no longer what the reasonably prudent man would do under the circumstances but what the Legislature has commanded." (*Tedla* v. *Ellman, supra*, at p. 990 [19 N.E.2d ].)

An instructive analogy may be drawn between traffic rules and navigation rules designed to prevent collisions at sea. It is recognized that the navigation rules rather than what the conduct of a person of ordinary prudence would have been under the circumstances furnish the standard as to whether a collision has been caused by negligence of a navigator (*The Pennsylvania*, 19 Wall. (86 U.S.) 125, 135 [22 L.Ed. 148]; *The Suffolk*, 258 F. 219, 221 [169 C.C.A. 287]; *Belden* v. *Chase*, 150 U.S. 674, 702-703 [14 S.Ct. 264, 37 L.Ed. 1218]), and that "it is necessary that the courts should rigorously enforce the collision rules that the object for which they were framed may be attained." (*The Stifinder*, 275 F. 271, 277; *The Oregon*, 158 U.S. 186, 202 [15 S.Ct. 804, 39 L.Ed. 943].) This same reasoning should be applicable to the rules of the Vehicle Code, and this has been the view of the courts of this state, which have held that conduct in violation of the Vehicle Code is negligence as a matter of law. (*Benjamin* v. *Noonan*, 207 Cal. 279, 283 [277 P. 1045]; *Hurtel* v. *Albert Cohn, Inc.*, 5 Cal.2d 145, 147 [52 P.2d 922]; *Lahti* v. *McMenamin*, 204 Cal. 415, 418 [268 P. 644]; *Bresee* v. *Los Angeles Traction Co.*, 149 Cal. 131, 139 [85 P. 152, 5 L.R.A.N.S. 1059]; *Ferguson* v. *Nakahara*, 43 Cal.App.2d 435, 443 [110 P.2d 1091]; *Reeves* v. *Lapinta*, 25 Cal.App.2d 680, 681 [78 P.2d 465]; *Scragg* v. *Sallee*, 24 Cal.App. 133, 144 [140 P. 706]; *Mazgedian* v. *Swift & Co.*, 22 Cal.App.2d 570, 572 [71 P.2d 833]; *Duncan* v. *J. H. Corder & Son*, 18 Cal.App.2d 77, 83 [62 P.2d 1387]; see 2 Cal.Jur. Ten-Year Supp., 226-227; 19 Cal.Jur. 632.) The Legislature in revising the Vehicle Code from time to time presumably knew that the courts had established this doctrine, and in 1943 it expressly recognized the doctrine when it provided in section 403.5 that conduct in violation of the provisions of the Vehicle Code shall not be regarded as "negligence *per se*" if a federal regulation authorizes such conduct.

Extraordinary circumstances may justify conduct that appears to violate the letter of a statute but which is impliedly excepted therefrom, if obedience is substantially impossible or deviation from the letter of the statute is necessary

to serve its purpose. "If a criminal statute or ordinance which prohibits a particular act is construed to permit such an act to be done under conditions without criminal responsibility such an act may be done under the same conditions without creating civil liability under the statute or ordinance. Many statutes and ordinances are. so worded as apparently to express a universal obligatory rule of conduct. Such enactments, however, may in view of their purpose and spirit be properly construed as intended to apply only to ordinary situations and to be subject to the qualification that the conduct prohibited thereby is not wrongful if, because of an emergency or the like, the circumstances justify an apparent disobedience to the letter of the enactment. Thus, the statutory prohibition against parking an automobile on the traveled part of a highway is not applicable to one which has broken down and is incapable of motion and thus remains on the highway while the driver is diligently seeking assistance to remove it. The provisions of statutes, intended to codify and supplement the rules of conduct which are established by a course of judicial decision or by custom, are often construed as subject to the same limitations and exceptions as the rules which they supersede. Thus, a statute or ordinance requiring all persons to drive on the right side of the road may be construed as subject to an exception permitting travellers to drive upon the other side, if so doing is likely to prevent rather than cause the accidents which it is the purpose of the statute or ordinance to prevent." (Restatement, Torts, § 286, comment (c) ; see *Johnson* v. *Griffith,* 19 Cal.2d 176, 180 [120 P.2d 6] ; *Mathers* v. *County of Riverside,* 22 Cal. 2d 781, 785 [151 P.2d 419] ; *Umemoto* v. *McDonald,* 6 Cal.2d 587, 590 [58 P.2d 1274] ; *Dewhirst* v. *Leopold,* 194 Cal. 424, 431 [229 P. 30] ; *Berkovitz* v. *American River Gravel Co.,* 191 Cal. 195, 199 [215 P. 675] ; *Cragg* v. *Los Angeles Trust Co.,* 154 Cal. 663, 667 [98 P. 1063, 16 Ann.Cas. 1061] ; *Fietz* v. *Hubbard,* 59 Cal.App.2d 124, 128 [138 P.2d 315] ; *Prescott* v. *City of Orange,* 56 Cal.App.2d 144, 148 [132 P.2d 523] ; *Morris* v. *Purity Sausage Co.,* 2 Cal.App.2d 536, 540 [38 P.2d 193] ; *Fouch* v. *Werner,* 99 Cal.App. 557, 564 [279 P. 183]; *Dugan* v. *Fry,* 34 F.2d 723; *Long* v. *Steffen,* 194 Wis. 179 [215 N.W. 892, 61 A.L.R. 1155] ; 24 A.L.R. 1304; 63 A.L.R. 277.) Thus "if some good excuse appears, which would be a sufficient defense to an action for the penalty imposed by the law . . . then the law is not really violated." (*Berkovitz* v.

*American River Gravel Co.,* 191 Cal. 195, 199 [215 P. 675].)
"A classic illustration of the same general principle is the
Bologna ordinance against blood-letting in the streets, which
did not make criminals of surgeons." (Edgerton, J., in *Ross*
v. *Hartman,* 139 F.2d 14, 16; 78 App.D.C. 217; 158 A.L.R.
1370.) A similar exception is expressly formulated in the Nav-
igation Rules as follows: "In obeying and construing these
rules due regard shall be had to all dangers of navigation and
collision, and to any special circumstances which may render
a departure from the above rules necessary in order to avoid
immediate danger." (33 U.S.C.A., § 212, art. 27.) "The duty
is imperative to observe the rules, and to assume that an ap-
proaching vessel will do likewise, until after the danger has
become so manifest as to show that there is no proper choice
of judgment other than that of departing from the rules.
Any other course would lead to confusion and be a most pro-
lific source of accidents." (*The Piankatank,* 87 F.2d 806, 810;
*Intagliata* v. *Shipowners etc. Co.,* 26 Cal.2d 365, 377 [159
P.2d 1].)

A statute regulating traffic must be reasonably construed
not only by limiting its effect to the situations envisaged when
it was enacted, but also by reading such provisions in con-
junction with one another and with the rules of the common
law supplementing them. Thus, provisions governing the right
of way at an intersection, by their very nature, apply only
to part of the conduct of each operator of a vehicle. The
safety of operators who meet at an intersection depends also
on the conduct of each of them before he reaches the critical
juncture. An operator who approaches the intersection at
an improper rate of speed, or suddenly increases his speed
before he reaches the intersection, may be at fault even though
he is first at the intersection and therefore under the letter
of the statute entitled to cross it. (*Lindenbaum* v. *Barbour,*
213 Cal. 277, 281 [2 P.2d 161]; *Stevenson* v. *Fleming,* 47
Cal.App.2d 225 [117 P.2d 717]; *Groat* v. *Walkup Drayage
etc. Co.,* 14 Cal.App.2d 350, 355 [58 P.2d 200]; see 136
A.L.R. 1497, 89 A.L.R. 838.) Again, an operator who reaches
the intersection first after he has properly approached it may
be at fault if he proceeds blindly in disregard of danger that
is obvious. (*Donat* v. *Dillon,* 192 Cal. 426, 429 [221 P. 193];
*Enz* v. *Johns,* 112 Cal.App. 1, 5 [296 P. 115]; *Blackmore* v.
*Brennan,* 43 Cal.App.2d 280, 287 [110 P.2d 723]; see 2 Cal.

Jur. Ten-Year Supp. 341.) Since the duty of each operator to observe the right of way rules is imperative, one who arrives at an intersection first may assume that the operator of another vehicle will obey the rules. (*Leblanc* v. *Coverdale,* 213 Cal. 654, 657 [3 P.2d 312]; *Page* v. *Mazzei,* 213 Cal. 644, 645 [3 P.2d 11]; *Ebert* v. *Tide Water Assoc. Oil Co.,* 54 Cal. App.2d 497, 501 [129 P.2d 135]; *Avalos* v. *Grimale,* 30 Cal. App.2d 725, 728 [87 P.2d 392]; *Couchman* v. *Snelling,* 111 Cal.App. 192, 195 [295 P. 845]; see 2 Cal.Jur. Ten-Year Supp. 338.) One's right to assume that the other will obey the rules ceases only when the circumstances make it manifest that the other cannot or does not intend to obey the law; even then the one having the right of way is not at fault unless by yielding the right of way, stopping his vehicle, or taking other action, a collision could be avoided.

The issues in the present case related to the approach of each operator to the intersetcction and his conduct at the intersection. The bus driver testified that the bus was approximately 195 feet from the intersection when he first observed plaintiff's car, which was then approximately 300 feet from the intersection; that he was travelling at approximately 30-35 miles per hour and that plaintiff was travelling at about 45 miles per hour; that he realized that the two vehicles would reach the intersection at approximately the same time if he did not change his speed but that he expected that the plaintiff, coming from the left, would reduce his speed. Plaintiff testified that he was travelling at a speed of approximately 25 miles per hour and first saw the bus when he was approximately 75 feet from the intersection and the bus was at least twice that far from the intersection. The bus driver was at fault if he raced for the intersection or if he became aware that plaintiff would not give him the right of way and if he could have avoided the collision by yielding the right of way, stopping or taking other action. Plaintiff was at fault if he approached the intersection at improper speed or observed that the bus would reach the intersection first or at the same time as he would. If the bus driver approached the intersection at a proper rate of speed and could not anticipate that plaintiff would be there first, the issue became important whether the bus driver perceived that there was a manifest danger of collision to be avoided by his yielding the right of way, stopping, or taking other action to avoid the collision. In this respect his testimony, that he knew that

a collision was inevitable when plaintiff's car was about 40 feet from the intersection, was important. It must also have been clear to the plaintiff that the closer he came to the intersection the more he had to be certain that he did not have "worlds of time" as he allegedly thought when he first saw the bus.

The jury should have been instructed in accordance with the foregoing rules.

The trial court's instruction, quoted in the majority opinion, did not advise the jury that the question as to who was at fault was to be determined under the right-of-way provisions, if both cars properly approached the intersection and one was there first or one car came from the right, if they both arrived at the intersection at the same time. The instruction was inadequate in not advising the jury that one cannot gain the right of way by racing for it or otherwise violating the law. The effect of the instruction was to advise the jury that the provisions of the Vehicle Code dealing with the right of way were of no consequence, and that if an ordinary prudent person under the circumstances would have violated the statute, the violation was excused. Instead of describing the scope of the statutory standard the court rejected that standard and in its place adopted the reasonable man standard, leaving it to the jury to determine what was proper conduct under the circumstances.

In cases of this sort the choice of the wrong theory, either as a basis of instruction to the jury or as a rule of decision for the trial court sitting without a jury, may have serious consequences. Any doctrine that allows uncontrolled discretion in the jury or trial court to disregard statutory standards cannot fail to bring about a similar disregard of the standards by those whose conduct is regulated.

CARTER, J.—I dissent. The issue in this case is whether or not a purported violation of the traffic law right of way at intersections (Veh. Code, § 550) constitutes negligence *per se;* that is, whether the court should adopt it as the invariable standard of care or the test should be that of the conduct of a person of ordinary prudence. The latter is preferable for the reason that the rule is not capable of precise application.

A violation of the rule may or may not be negligence *depending upon the circumstances.* That is conceded by the opinion prepared by Justice Edmonds and is supported by the

authorities. It is clear that there may be factors indicating that the violation of the rule may not be negligence, such as excuse, emergency, justification, the speed of the vehicles, and their distance from the intersection and the nature of the intersection. (See *Mathers* v. *County of Riverside*, 22 Cal. 2d 781 [141 P.2d 419]; *Lindenbaum* v. *Barbour*, 213 Cal. 277 [2 P.2d 161]; *Stevenson* v. *Fleming*, 47 Cal.App.2d 225 [117 P.2d 717]; *Miller* v. *Cranston*, 41 Cal.App.2d 470 [106 P.2d 963]; *Groat* v. *Walkup Drayage etc. Co.*, 14 Cal.App.2d 350 [58 P.2d 200].) Being dependent upon the circumstances in the particular case, we have nothing more, in effect, than an application of the ordinary prudence standard, and the provision of the statute should not be made an absolute standard for the determination of either the issue of negligence or contributory negligence. The right of way rule does not lend itself to practical application. It is only in the rare theoretical situation that it can be applied. It must be supposed that the two vehicles are travelling at the identical speed and enter the intersection at precisely the same time; and that the view of oncoming vehicles is equal to both drivers. There must be no disturbing elements or sudden emergencies. Justice Edmonds treats the matter as creating a prima facie case of negligence and then shifts the burden of going forward to the opponent to show exculpatory circumstances. That leads only to confusion of the jury. If there may be such circumstances then the test actually being used is the conduct of a person of ordinary prudence. Hence the jury should be so instructed thus avoiding the complication of shifting the burden of proceeding which must inevitably result in confusion.

The majority opinion states: ''The presumption created by proof of the failure to comply with a statute or ordinance relieves a defendant from the burden of proving that the plaintiff failed to act as a reasonably prudent man. All that the defendant need prove to establish contributory negligence is that plaintiff's violation of the statute in question proximately caused the accident. *The burden cast upon the defendant where such violation is relied upon, is therefore more easily established than a failure to act as would a reasonably prudent man under similar circumstances. If there was a violation of the applicable statute, the burden of going forward is then cast upon the plaintiff, if the defendant is relying upon contributory negligence, to present evidence jus-*

*tifying an excuse for violation.* If the jury does not believe that the evidence is sufficient to excuse violation, it must find for the defendant.'' (Emphasis added.) The foregoing statement will not bear thoughtful analysis. After stating that: ''All that the defendant need prove to establish contributory negligence is that plaintiff's violation of the statute in question proximately caused the accident,'' the opinion states: ''The burden cast upon the defendant where such violation is relied upon, is therefore more easily established than a failure to act as would a reasonably prudent man under similar circumstances.'' Why this result obtains does not appear. We may assume that all available evidence relative to plaintiff's conduct will be offered, and it is for the trier of fact to determine from such evidence in the light of the applicable statute whether such conduct was that of a reasonably prudent person under similar circumstances. If it was, it cannot be said that plaintiff was negligent even if he did violate said statute. The opinion then states that if there was a violation of the applicable statute, *"the burden of going forward is then cast upon the plaintiff . . . to present evidence justifying an excuse for violation."* (Emphasis added.) If, as asserted in the majority opinion, the violation of a statute or ordinance which is a proximate cause of the accident is negligence *per se,* how can such violation be excused or justified? It clearly appears from the discussion in the majority opinion that it is the position of the majority that the violation of a statute or ordinance is not negligence *per se* unless it is a proximate cause of the accident. It should follow that if such violation is a proximate cause of the accident, it cannot be excused or justified so far as civil responsibility is concerned. That is to say, that if a defendant has violated a statute or ordinance, and such violation is a proximate cause of an accident, he is liable in civil damages for any injury which may flow therefrom. Contributory negligence will not defeat recovery by plaintiff unless it contributes proximately to the happening of the accident. Therefore, in order to hold that the violation of a statute or ordinance by plaintiff constitutes contributory negligence, it must first be determined that such violation was a proximate cause of the accident. If it was a proximate cause of the. accident, it cannot be excused or justified. However, the majority opinion purports to lay down the rule that the violation of a statute or ordinance may be a

proximate cause of the accident, and therefore constitutes negligence *per se,* and yet may be excused or justified. Such a rule can only lead to confusion worse confounded. How such a rule can be applied in a trial forum is difficult to understand. Negligence cases are presented by the plaintiff first making out a prima facie case of negligence on the part of the defendant which was a proximate cause of the accident. The defendant then presents his defense by attempting to show absence of negligence on his part or contributory negligence on the part of the plaintiff. When the evidence is concluded the court instructs the jury that so far as the burden of proof is concerned, such burden is on the plaintiff to prove defendant's negligence and the burden is on the defendant to prove any contributory negligence on the part of plaintiff unless such contributory negligence affirmatively appears from the evidence presented by the plaintiff. Accepting the theory advanced in the majority opinion that the violation of a statute or ordinance is negligence *per se,* and assuming that there was evidence of a violation of a statute or ordinance by either party, the court could very simply instruct the jury that if they believe that either party was guilty of a violation of a statute or ordinance and that such violation was a proximate cause of the accident the violator was guilty of negligence *per se* unless such violation was excused or justified. This is, in effect, what the trial court did in the case at bar except that it added that a person who violates a statute is not guilty of negligence if he acted as a reasonably prudent person, which is the equivalent of saying that the violation was excused or justified. There is no basis in such a case for talk about the "burden of going forward," or that it is easier to establish contributory negligence by proving that plaintiff violated a statute than to prove that his conduct was not that of a reasonably prudent person, as all of the evidence has been already introduced and the function of the jury is to weigh that evidence and arrive at a conclusion based upon the law contained in the instructions of the court.

This court has recognized that criminal statutes such as traffic laws are not always accepted as approximate standards in civil actions for negligence. (*Hopper* v. *Bulaich,* 27 Cal. 2d 431 [164 P.2d 483]; *Clinkscales* v. *Carver,* 22 Cal.2d 72 [136 P.2d 777]; *Mathers* v. *County of Riverside,* 22 Cal.2d 781 [141 P.2d 419].) In the Mathers case, involving the traffic law (Veh. Code, § 525) requiring that a car be driven

as near the right hand curb as practicable, this court in holding erroneous an instruction that the violation thereof was negligence as a matter of law stated (p. 786): "Under all of the circumstances of the case it should have been left to the jury whether or not the position of her [plaintiff's] car with reference to the white [center] line constituted contributory negligence."

It should be obvious that the moment the absolute standard, which makes violation of a statute or ordinance negligence *per se*, is relaxed, by permitting a showing of excuse, justification, emergency, etc.; the inevitable result is that the issue of negligence is determined by the trier of fact giving consideration to evidence relating to the conduct of the parties. While the standard provided in the statute or ordinance is a factor to be considered, the ultimate fact to be determined is whether or not the person charged with negligence or contributory negligence failed to exercise that degree of care which a reasonably prudent person would have exercised under similar circumstances. Hence, the standard applied is the conduct which would be expected of a reasonably prudent person. Experience has shown that this is the standard applied by juries in the general run of negligence cases. Little heed is given to technical and artificial standards which have no practical application, as jurors are familiar with traffic rules and are more capable of applying them to the facts of a particular case than the members of this court.

For the reasons above discussed a violation of the traffic law right of way as constituting negligence *per se* is peculiarly inadequate to test civil liability, and the instruction in the case at bar applying the test of a reasonably prudent person was proper.

The judgment should be affirmed.