[Civ. No. 28176. First Dist., Div. Two. Dec. 21, 1971.]

THOMAS G. SWICKHEIMER et al., Plaintiffs and Appellants, v. LEWIS G. KING, Defendant and Respondent.

**COUNSEL**

Raymond N. Baker and Paul Dresnick for Plaintiffs and Appellants.

Douglas R. Page for Defendant and Respondent.

**OPINION**

**ROUSE, J.**—Plaintiffs Thomas and Gayle Swickheimer brought this action for breach of contract against defendants Richard Ballard, Ballard Con-

struction Co., Inc. (hereafter "Ballard Co."), Lewis King and John Boscarello.

Following a nonjury trial, the court made the following findings of fact: that plaintiffs were the owners of certain real property and that in early June 1966, they entered into an oral agreement whereby defendant Boscarello was to excavate and grade a road upon plaintiffs' property; that Boscarello did not possess any type of contractor's license issued by the State Board of Contractors; that on June 20, 1966, plaintiffs entered into an oral agreement with defendant Richard Ballard, acting on behalf of defendant Ballard Co., whereby Ballard Co. was to exercise competent and adequate supervision over Boscarello's grading and excavation work; that defendant King was the responsible licensed managing employee for Ballard Co. and held a B-1 contractor's license; that Boscarello breached his oral agreement with plaintiffs in that he negligently and carelessly performed the grading and excavating of the road, proximately damaging plaintiffs' property in the sum of $5,000; that Ballard Co. and Richard Ballard also breached their oral agreement with plaintiffs and proximately caused the damage to plaintiffs' property by failing to adequately or competently exercise supervision over Boscarello's grading and excavation work; that King never met the plaintiffs and in no way participated in the making or performance of the agreements between plaintiffs, Boscarello and Ballard Co.; that on July 24, 1969, Richard Ballard received a final discharge in bankruptcy from plaintiffs' claims against him.

The court concluded as a matter of law that plaintiffs were not entitled to any damages or judgment against defendant King and that they were not entitled to judgment against Richard Ballard by reason of his discharge in bankruptcy; that plaintiffs were entitled to a joint and several judgment in the amount of $5,000 against defendants Boscarello and Ballard Co.

Judgment was accordingly entered, and plaintiffs filed notice of appeal from said judgment "as it relates to defendant LEWIS G. KING, and that defendant only." They take the position that King's testimony conclusively establishes that he breached his duties as a responsible managing employee and that he should therefore have been held liable to plaintiffs.

Plaintiffs make no attempt on appeal to contend that defendant King's conduct, as summarized above, rendered him liable to plaintiffs under the common law principles governing contract or tort actions. The evidence clearly supports the trial court's finding that King never participated in any way in the making or performance of plaintiff's oral agreements with Boscarello and Ballard Co. Indeed, King's testimony shows that he was never actually aware that Richard Ballard had entered into any agreement

with plaintiffs and that he had been told only of a "potential" job which might become available to Ballard. King's illness during the period when the road was under construction prevented him from personally visiting any job sites, and the record contains no evidence that King ever acquired actual knowledge of Ballard's dealings with plaintiffs. The trial court's "Announcement of Decision" aptly summarized this evidence as follows: "It appears that throughout the period of plaintiffs' dealings with defendants, [King] was incapacitated at his home, convalescing from a fusion operation, that he never met either plaintiff, and that he neither knew of nor participated in any of the transactions between plaintiffs and defendants."

Although the evidence thus affords no basis for a finding that King was guilty of actionable wrong or that he had control over the other defendants or was even aware of their wrongful conduct, plaintiffs take the position that King violated certain sections of the Business and Professions Code and that such violations rendered him civilly liable to plaintiffs. Specifically, plaintiffs contend that King violated Business and Professions Code, section 7068.1,[1] in that he failed to actively supervise the construction of the road on plaintiffs' property, never visited the construction site and, instead, allowed his principal, Richard Ballard, to exercise complete control over the project. Plaintiffs assert that King had an absolute duty to supervise the project himself because he knew that Ballard was unqualified to build a road and did not possess a license authorizing him to engage in road construction.

Plaintiffs also contend that King violated Business and Professions Code, section 7114,[2] by allowing Ballard, who was an unlicensed person, to proceed with the road construction.

Plaintiffs also rely upon Business and Professions Code, section 7068.2,[3] and contend that when King became ill, he ceased to perform the duties of

---

[1]Section 7068.1 provides in pertinent part that a responsible managing employee "shall be responsible for exercising such direct supervision and control of his employer's or principal's construction operations as is necessary to secure full compliance with the provisions of this chapter and the rules and regulations of the board relating to such construction operations."

[2]Section 7114 provides in pertinent part that "Aiding or abetting an unlicensed person to evade the provisions of this chapter or knowingly combining or conspiring with an unlicensed person, or allowing one's license to be used by an unlicensed person . . . constitutes a cause for disciplinary action."

[3]Section 7068.2 provides in pertinent part that "If the individual qualifying for the license is a responsible managing officer or responsible managing employee and ceases for any reason whatsoever to be connected with the individual or firm to whom the license is issued, the licensee and the responsible managing officer or responsible managing employee qualifying for such license shall notify the registrar in writing within 30 days from such cessation."

a responsible managing employee within the meaning of that section, and should have notified the registrar so that appropriate steps could have been taken to insure that the road construction project was supervised by a qualified managing employee.

Finally, plaintiffs rely upon Business and Professions Code, section 7122.5,[4] and contend that this section rendered King absolutely liable for Ballard's wrongful conduct in performing construction work for which he was unlicensed and unqualified.

Plaintiffs' reliance upon the above-quoted sections of the Business and Professions Code is misplaced. Two of the sections in question are obviously inapplicable to the facts here present. ■ Thus, the evidence in the instant case would not support a finding that King violated section 7114 by aiding, abetting or conspiring with an unlicensed person to evade the applicable rules and regulations or by allowing his license to be used by an unlicensed person. To the contrary, the evidence shows that King was totally unaware of the wrongful conduct of the other defendants.

■ Section 7068.2 is likewise inapplicable, since it requires a responsible managing employee to notify the registrar when he ceases for any reason "to be connected with the individual or firm to whom the license is issued. . . ." The evidence in the instant case shows that King never "cease[d] . . . to be connected" with Ballard Co. and that he continued to act as its responsible managing employee and to make himself available for telephone consultations during the period when his illness precluded more active participation on his part.

Of the remaining two sections upon which plaintiffs rely, section 7068.1 does appear to impose upon a responsible managing employee an absolute responsibility to directly supervise and control his employer's or principal's construction operations. Section 7122.5 also provides that a responsible managing employee may be subject to disciplinary action for the wrongful conduct of the firm employing him "whether or not he had knowledge of or participated in the prohibited act or omission."

■ These two sections, in effect, render a responsible managing employee strictly liable to disciplinary proceedings when his principal acts

---

[4]Section 7122.5 provides that "The performance by any individual, partnership, corporation, firm, or association of any act or omission constituting a cause for disciplinary action, likewise constitutes a cause for disciplinary action against any licensee who at the time such act or omission occurred was the responsible managing employee, qualifying partner, responsible managing officer, or qualifying member of such individual, partnership, corporation, firm, or association, whether or not he had knowledge of or participated in the prohibited act or omission."

wrongly. Statutes of this nature have been held not to be violative of the due process clauses of the federal or state Constitutions, since they are a reasonable exercise of the police power directed toward the protection of the public. Thus, our courts have upheld a regulation imposing upon a horse trainer strict liability for the condition of his horse and providing for the suspension of his license in the event the horse was drugged, with or without his knowledge. (*Sandstrom* v. *Cal. Horse Racing Board* (1948) 31 Cal.2d 401 [189 P.2d 17, 3 A.L.R.2d 90]; *Taylor* v. *Wright* (1948) 84 Cal.App.2d 521 [191 P.2d 73].) A liquor licensee may likewise be held strictly accountable for the acts of his employees or agents, and their wrongful conduct may constitute legal cause for the revocation of his license. (*Garcia* v. *Martin* (1961) 192 Cal.App.2d 786 [14 Cal.Rptr. 59].)

 However, the fact that the Business and Professions Code sections upon which plaintiffs rely constitute a valid exercise of the police power does not render them applicable in a civil action for damages. The sections in question are regulatory and disciplinary in nature, and they were clearly not intended to alter the rules governing civil liability.

In *Hollywood etc. Co.* v. *John Baskin, Inc.* (1953) 121 Cal.App.2d 415, 430 [263 P.2d 665], the court held that Business and Professions Code, sections 7108 and 7120, which provide for disciplinary action against a contractor or subcontractor who diverts funds or property received for a construction project or who deliberately fails to pay for materials or services rendered, were not applicable in an action on a labor and material bond.

In the subsequent case of *G & P Electric Co.* v. *Dumont Constr. Co.* (1961) 194 Cal.App.2d 868 [15 Cal.Rptr. 757], an action for breach of contract and the imposition of a mechanic's lien, reliance was placed upon Business and Professions Code, section 7109, which provides for the suspension or revocation of a contractor's license if he wilfully departs from or disregards plans and specifications without the consent of the owner and the person entitled to have the construction project completed in accordance with such plans and specifications. The appellate court pointed out that the purpose of the licensing act was to guard the public against the consequences of incompetent workmanship, imposition and deception and that it punished wilful breaches of contract and other wrongful acts by providing for suspension or revocation of a license. The court stated: "We do not believe that section 7109 creates additional substantive rights in favor of [the defendants]. That section is concerned only with defining a ground for disciplinary action by the State Contractors' License Board." (P. 880.)

In the instant case, it is equally clear that those Business and Professions Code sections which defendant King could be held to have violated did not create any right to civil damages in favor of plaintiffs but provided only for disciplinary action by the State Contractors' License Board.

In their closing brief, plaintiffs attempt to avoid the rule of *G & P Electric Co.* v. *Dumont Constr. Co., supra*, by arguing that even if the Business and Professions Code sections are disciplinary in nature, they may still be used as a basis for civil liability. Plaintiffs cite Prosser on Torts (3d ed. 1964), page 191, as authority for the proposition that "[w]hen a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard for all members of the community, from which it is negligence to deviate." However, plaintiffs have overlooked the fact that the author goes on to note certain exceptions to this rule, as where the Legislature has enacted a statute which provides for strict liability and which imposes an absolute duty for whose violation there is no recognized excuse. (Prosser on Torts (3d ed. 1964) pp. 198-199.) In the instant case, as noted above, defendant King could be held to have violated only those two Business and Professions Code sections which imposed strict liability.

Plaintiffs also rely upon *Satterlee* v. *Orange Glenn School Dist.* (1947) 29 Cal.2d 581 [177 P.2d 279], as authority that the violation of any statute is negligence per se. However, that case dealt with traffic rules which are statutory standards of due care prescribing the proper conduct of a reasonable person under particular circumstances. (*Satterlee* v. *Orange Glenn School Dist., supra*, at pp. 587-588.) We are not here concerned with a statutory violation of this nature.

The judgment is affirmed.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied January 20, 1972.